[No. 13393.  Department One.  August 28, 1916.]

Clark Lloyd Lumber Company, *Respondent*, v. Puget
Sound & Cascade Railway Company, *Appellant*.[1]

Limitation of Actions—Trespass—Actions Not Provided For—
Statute Applicable.  An action to recover damages to a mill site
and boom grounds and to a flume, through blasting in the construc-
tion of a railroad, in violation of the terms of a written contract
agreeing to preserve the plaintiff's property, is an action for a di-
rect trespass, to be commenced within three years as limited by
Rem. & Bal. Code, § 159, if not an action arising out of an express
written contract, to be commenced within six years under Id., § 157;
hence it is not barred within two years, under Id., § 165, relating to
actions for relief "not hereinbefore provided for."

Easements—Contracts—Construction—Reservation of Rights.
Where, on deeding a railroad right of way, the grantor reserved the
right to use and occupy the shore line of a river for booming and
logging purposes and to maintain its present boom anchorages, "such
occupancy" and attachment of booms not to interfere with grantee's
construction of its railroad, the railroad company has no superior
right to deviate from the center line of its right of way and injure
the boom anchorages or change the shore line and currents of the
stream; since "such occupancy" has direct reference to the shore as
it then was.

[1]Reported in 159 Pac. 774.

SAME. In such case, damage to the mill site could also be recovered, since the property was one property and the damages affected the whole.

DAMAGES—TRESPASS TO REAL PROPERTY—MEASURE OF DAMAGES—COST OF REPAIRS. The measure of damages to a mill site and boom grounds committed by a railroad in constructing its road by the destruction of boom anchorages and changing the shore lines and the currents of the stream by deposits of debris, is not the difference between the value of the property before and after the injury, but the reasonable cost of restoring the property to its former condition and repairing the damage, where the cost of such restoration was shown with reasonable certainty.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered August 9, 1915, upon the verdict of a jury rendered in favor of the plaintiff for $9,362.75, for trespass to property. Reversed, unless $6,737.75 is remitted.

*Kerr & McCord*, for appellant.

*Ryan & Desmond* and *Coleman & Gable*, for respondent.

CHADWICK, J.—This action is brought to recover for damages to respondent's mill site and boom grounds, and for damages to a flume. Another element of damage was rejected by the jury and will not be noticed in this opinion.

Plaintiff owned property along the shore of the Skagit river. Its mill was on the west shore. It opened a fin boom anchored to the east shore. Appellant, desiring to construct a railroad along the east bank of the stream across the property of respondent, the parties, on the 27th day of July, 1912, with intent to preserve their mutual rights, entered into a written contract. The material parts of the contract follow:

"Whereas, said first party has under even date herewith executed to second party a certain right-of-way deed over certain lands in Skagit county, to-wit, Lots 6, 7 and 8 in Section 30 and Lots 8 and 9 in Section 29, Township 35 North, Range 5 of W. M., reference to which deed is hereby made for a more particular description of the lands so conveyed, and,

"Whereas, the said first party is desirous of obtaining the rights and privileges herein agreed upon.

"Now Therefore, for a valuable consideration, it is hereby agreed between the parties hereto as follows:

"1st.   That the said party of the first part is hereby granted the right to cross and re-cross said right-of-way so conveyed with such logging or skid roads, shutes or tramways or to haul logs or bolts across said right-of-way and railroad at such places and points as may be convenient for first party and also the right to take and remove across said railroad and right-of-way in any feasible way whatsoever any and all timber on said described lands; provided, however, that said first party shall use ordinary care and diligence in taking any and all timber, logs or bolts over and across said railroad track, having due regard to the condition of the ground and the feasibility and cheapest way to log the timber off said lands and the rights of second party herein in operating its railroad; and in case any damage is done to second party's railroad or track while first party is so logging and removing the timber as hereinbefore provided it shall not be liable to second party for any injury done or caused unless such injury is caused by the wilful, deliberate or careless act of first party.

"2nd.   That the said first party shall have a right to use and occupy all the shore line along the Skagit river for booming, logging or other purposes and shall have the right to keep its fin booms tied on the stumps it is now attached to or any other structure it may place on such shore line or lands; provided, however, that such occupancy of the shore line and tying and maintaining of said fin boom on said stumps shall not interfere with the construction, operation and maintenance of the railroad of said second party."

In building the railroad, appellant did not follow the center of the right of way, but followed the shore line as nearly as it could.   It blasted the stumps to which the boom was anchored, and wasted the debris from the cut along the shore over the bank of the stream.   The contention of respondent is that the anchorage of its boom and a cove in which it floated logs were destroyed, and the currents of the stream were so shifted as to result in material damage to its mill

property.  A jury found that respondent was entitled to re-
cover damages for the blasting of the stumps and the de-
posit of waste rock and dirt in the cove in the sum of $9,-
237.75, and for the destruction of the flume in the sum of
$125.  Judgment was entered accordingly.

The first question of law to be considered is whether the
action is barred by the statute of limitations.  It is con-
tended that this is an action for consequential damages sound-
ing in tort, and is barred under Rem. & Bal. Code, § 165,
"an action for relief not hereinbefore provided for shall be
commenced within two years after the cause of action shall
have accrued," and does not come under § 159, which pro-
vides that an action for a direct trespass *vi et armis* shall be
begun within three years, or § 157, limiting an action upon
a contract in writing, or liability express or implied arising
out of a written agreement.  *Suter v. Wenatchee*, 35 Wash.
1, 76 Pac. 298, 102 Am. St. 881; *Denney v. Everett*, 46
Wash. 342, 89 Pac. 934, 123 Am. St. 934; *Welch v. Seattle
& Montana R. Co.*, 56 Wash. 97, 105 Pac. 166, 26 L. R. A.
(N. S.) 1047, are relied on.

The *Welch* case in no way bears upon the facts of this
case.  Indeed, the case distinguishes itself.  It is said in the
opinion that the damages sought were not damages to the
freehold in which plaintiff had no interest, but compensation
for the loss of business.  There being no element of trespass
upon tangible property, in so far as the plaintiff was con-
cerned, it followed that the loss of business complained of
was purely consequential.  In *Suter v. Wenatchee, supra,*
the same question was before the court.  In that case the
court held that damages resulting from an overflow from an
irrigating canal lawfully built but without sufficient provision
for surplus water were consequential, and the right to re-
cover was barred by the two-year statute.

So, too, in *Denney v. Everett, supra,* the court was called
upon to consider a lawful act with consequent injury.  The
*Suter* case was followed.  These decisions are instructive,

and, while holding on the record made in the particular case that the action was not for a direct trespass but a consequential injury, they in no way militate against respondent's right to recover in the case at bar.

That § 159 of the code refers to trespasses that are direct, and not to those fictional trespasses that give rise to actions upon the case, is suggested in the *Suter* case. The rule for determining the character of the action is best stated in 3 Blackstone's Commentaries (Lewis' ed.), p. 123:

"And it is a settled distinction, that where an act is done which is in itself an immediate injury to another's person or property, there the remedy is usually by an action of trespass *vi et armis;* but where there is no act done, but only a culpable omission, or where the act is not immediately injurious, but only by consequence and collaterally, there no action of trespass *vi et armis* will lie, but an action on the special case, as the damages consequent on such omission or act."

In none of the cases relied on was there an immediate injury. The blasting of the stumps and the waste of the debris over the bank and into the cove was an immediate injury. The damages which may result do not have to be immediate to sustain an action under § 159. The statute does not concern itself with the moment of time when the damage actually accrues, or the amount of the damage. They may continue and grow in volume. It concerns itself only with the character of the trespass. If a thing lawful to be done results in damage, the case falls under the two-year statute. If the thing done is wrongful in its inception to the extent that it presently invades a property right, the three-year statute applies. Our thought is illustrated in the *Suter* case. In order to avoid the two-year statute, the pleader charged negligent construction as an immediate or direct invasion of his property right. The theory was rejected, the court saying:

"The manner of construction was not in itself wrongful. Appellant had the lawful right to construct as it chose, and

to permit the water to flow through the canal to its full capacity. These things were of no concern to respondents, unless they resulted in some injury to them. Such injury, so resulting, must necessarily have been consequential, and not the direct result of wrongful force applied to the respondents'. lands, as must have been true to create a trespass."

In the instant case, appellant did not have "a lawful right to construct as it chose." Its rights are defined in the contract, which clearly implies the preservation of respondent's property for the uses intended, as well as its own right to build its railroad. In the *Suter* case, no damage would have resulted from the primary act of building the canal. The damage complained of was the result of its after negligence in filling the canal beyond its capacity. But here, the damage, if any, came from a physical act touching the property of respondent, and theoretically at least, was a damage in its inception.

Having decided that the action, if treated as an action for trespass, falls within the three-year statute, it will be unnecessary to inquire whether it might also be sustained as an action for breach of contract under the six-year statute. *Harding v. Ostrander R. & Timber Co.*, 64 Wash. 224, 116 Pac. 635; *Murray v. Wishkah Boom Co.*, 76 Wash. 605, 137 Pac. 130.

Appellant contends that, having a deed to the right of way, it had a superior right to construct its road in the manner in which it did, and that the rights of respondent are subservient and subordinate to it. The right to invade the property right of respondent is not given by the deed, nor does a fair construction of the contract sustain it. The right reserved by respondent was to use and occupy the shore line in the manner it was then used. It would have had this right without any contract. This right is not destroyed by the further provision of the contract that such occupancy shall not interfere with the construction, operation and maintenance of the railroad by appellant. The contract must be con-

strued by reference to its whole context. "Such occupancy" has direct reference to the shore as it was, and gave to appellant no right to deny that use, or to so change the shore as to interfere with respondent's property; the only exception being, possibly, that the contract implies a right to remove the stumps to which the boom was attached, providing, or giving to respondent opportunity to provide, other means for anchoring its boom.

Nor do we find merit in the contention that no damages can be recovered for injury to the mill site. The property was one property and the damage affected it as a whole.

It is further contended that the court applied the wrong measure of damages, and that the damages are excessive. With this we agree. The court instructed the jury to find the difference between the value of the property before and after the trespass and to return a verdict for the difference. We think the court fell into error. The measure of damages, where a removable thing is put upon property that menaces or destroys its use, is the reasonable cost of removing it. To illustrate our thought, it will be sufficient if we refer to remedies. The respondent in this case could have removed the loose rock and waste and put in a "dead man" in place of the stumps which were removed, and recovered the reasonable cost of restoring its property, or it could take the property as it is and recover such sum as a jury might find to be the reasonable cost of removal. 4 Sutherland, Damages (3d ed.), § 1018; 3 Sedgwick, Damages (8th ed.), § 932; *Koch v. Sackman-Phillips Inv. Co.*, 9 Wash. 405, 37 Pac. 703.

Under the testimony in this case, we cannot escape the conclusion that the jury has acted as a medium between a willing seller and an unwilling buyer.

Both sides submitted testimony tending to show the cost of removing the rock and waste material from the river bank. It is clear, even under respondent's own testimony, that the shore could be restored to its former outline at a cost not to exceed $2,500.

The cost of repairing the damage being reasonably certain, we have concluded to exercise our discretion and order a conditional remission of the judgment so that the recovery will not exceed the sum of $2,500 and $125 damages to the flume. If, within thirty days after the remittitur goes down, respondent will satisfy the judgment in excess of $2,625, the judgment will stand affirmed. If it does not, the case will be set down for a retrial by the court below.

The instructions in this case are of great length and are subject at least to the charge of argumentativeness, and in some degree to the charge that they are conflicting. The issue is a simple one, and in the event of a retrial, we would suggest that it be more sharply defined.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.