[No. 13393. *En Banc*. May 18, 1917.]

CLARK LLOYD LUMBER COMPANY, *Respondent*, v. PUGET
SOUND & CASCADE RAILWAY COMPANY, *Appellant*.[1]

TRIAL—INSTRUCTIONS—ISSUES. In an action for damages to a mill site and grounds through railroad construction, it is reversible error to instruct the jury upon plaintiff's duty to minimize the damages by removing the cause of the injury, where there was no evidence to sustain it and that issue had been expressly withdrawn from the jury.

DAMAGES—INJURY TO PROPERTY—MEASURE OF DAMAGES—DUTY TO MINIMIZE. In an action for damages to a mill site and boom grounds through railroad construction by dumping material and changing the contour of the shore and destroying anchorage which could not be restored, the measure of damages would be the difference in the value of the property before and after the work; but it may be shown that it was practicable to minimize the damages by restoring the contour of the shore and anchorage, in which case the measure of damages would be the reasonable cost of the work.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered August 9, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for trespass to property. Reversed.

*Kerr & McCord*, for appellant.

*Ryan & Desmond* and *Colman & Gable*, for respondent.

[1]Reported in 165 Pac. 94.

On Rehearing.

Chadwick, J.—Both parties to this action petitioned for a rehearing, respondent contending for its judgment, and appellant contending that the question of the cost of removing the debris from the cove had not in fact been litigated and, in reality, had been expressly excluded by the court. We were possibly misled by what we conceived to be the position of the appellant when the case came on for argument; but be that as it may, we are convinced, after reargument and a reexamination of the record, that our final holding is not to be justified. The writer of the opinion fell into error.

However, we adhere to our former opinion, 92 Wash. 601, 159 Pac. 774, in so far as it construes the contract and holds that respondent has a right of action which is not barred by the statute of limitations. We also hold to our ruling that the mill and boom are a part of one property, and that, if the value of the mill site is impaired by a destruction of the boom, it is a proper subject for a jury to inquire into.

From the beginning, respondent and appellant have pursued their respective contentions upon widely divergent theories; the one, that its property has been practically destroyed and that the loss was incurable except by way of money damages; and the other, that the contract gave it a right to construct its road even to the destruction of respondent's boom site, that the boom and mill were separate properties, that no damage had resulted, and if these defenses were not well sustained, the action was barred by the statute of limitations.

It is respondent's contention that the testimony amply sustains its assertion that its property has been all but destroyed, and that the true measure of damage is the difference in its value before and after appellant completed its work.

At the former hearing, counsel for appellant argued that such was not the true measure of damages. Admitting the general rule, it was urged that it does not pertain if there is

testimony tending to show that the cause of the injury is removable; in which event, the law works an exception to the general rule and will allow no more than the reasonable cost of removing the cause.

Counsel for respondent argues that all of the rights of appellant were saved by the trial judge, who instructed the jury on the issue of employing artificial means to restore the anchorage, as follows:

"In considering the damage or injury, if any, sustained by the plaintiff in the removal of said stump or stumps, you will take into consideration whether or not another anchorage can be found or created which will furnish a firm and secure anchorage for said fin boom at a place which will serve as efficient as said stump or stumps and the cost of finding or creating such new anchorage and attaching said boom thereto.

"In considering the question of whether or not the plaintiff has sustained any damage by the deposit of waste material in the indenture or cove in which the head of said boom was held, you will take into consideration the fact of whether or not the deposit of such waste material has affected or destroyed the efficiency of said indenture or cove as a protection for said fin boom and whether or not the same can by artificial means be made to furnish secure protection for said boom, and if such can be done, the cost of constructing such artificial work."

But we hardly think this instruction goes to the possibility of removing the waste of rock and earth. Nor will it operate to save to respondent the right to insist upon its verdict. There are two all sufficient reasons. First: There was no testimony to sustain it; and second, the court, by an express ruling made in the course of the trial, withheld that issue from the jury. A witness was asked:

"Q. What would be the expense per cubic yard to remove rock or earth from that location by scow? A. Well, the loose rock would be loaded on the scow for about 65c a yard, put on the scow. Q. Would there be any additional expense in unloading or depositing it from the scow? By Mr. McCord: What rock are you referring to? By Mr. Ryan: Any rock that might be necessary to remove from that vicinity.

There is testimony that the cove was filled up.  By Mr. Mc-
Cord: I object to all of this testimony as irrelevant, incom-
petent and immaterial; not proper rebuttal testimony.  Not
the proper measure of damages, not the proper measure of
determination."

Whereupon the court ruled:

"It is not the theory the plaintiff has prosecuted the action
upon."

Counsel for respondent abandoned his inquiry, saying:

"It is not, but the defendant has offered some testimony to
show conditions, it could be made in a state it was before for
a nominal amount.  If the court considers it not material in
the light of the present case, we don't care to introduce it."

Although the court afterwards permitted the witness to
answer, the subject seems to have been dropped by counsel.
As we now understand, counsel on both sides insist that this
testimony did not go to the question whether the waste and
debris could be removed, but was intended to show that appel-
lant could have removed the waste material, when constructing
its roadbed, by loading it upon a scow and hauling it away
instead of dumping it over the bank and into the river.  With
this understanding, we feel no hesitation in overruling our
former directions, and the judgment will be reversed upon
the ground that there was no testimony to sustain the instruc-
tion going to the minimization of the damages or the cost of
removing the cause of the injury.

It will be incumbent upon respondent, if it sustains the
issue tendered, to show that the contour of the shore cannot
be restored, and the amount of damage resulting to its prop-
erty by reason of appellant's interference with its boom site.
If it be shown that the property cannot be restored by removal
of the waste and the putting in of a "dead man," the measure
of damage would be the difference in the value of the prop-
erty before and after the work was done.  In considering this
issue, the jury should be cautioned to treat the property as a
mill site and boom site and not as an operating property, the

mill which formerly occupied the ground having been burned before appellant constructed its road. To meet this issue, appellant may show, in addition to meeting the general issue, the practicability of restoring the contour of the shore and the cost of such restoration, including the cost of installing a "dead man." If the jury finds for the appellant upon this issue, the measure of damage will be the reasonable cost of doing the work.

Reversed, and remanded for a new trial.

ELLIS, C. J., HOLCOMB, MOUNT, MAIN, WEBSTER, MORRIS, and PARKER, JJ., concur.