[No. 15437.   Department Two.   June 4, 1920.]

## CLARK LLOYD LUMBER COMPANY, *Respondent*, v. PUGET SOUND & CASCADE RAILWAY COMPANY, *Appellant*.[1]

DAMAGES (92-1)—EXCESSIVE DAMAGES—INJURY TO REAL PROPERTY. A verdict for damages to a mill site and boom location by the construction of a railroad will not be held to be excessive and given under the influence of passion and prejudice, where there was a decided conflict in the evidence, the jury viewed the premises, the question depended largely on the credibility of witnesses, and the case was carefully tried and submitted on proper instructions, and the verdict was amply supported by the testimony.

TRIAL (32)—RECEPTION OF EVIDENCE—REOPENING CASE—DISCRETION. The reopening of a case for further evidence being largely discretionary, error cannot be predicated upon the refusal to reopen a case generally for defendant's new testimony which was not surrebuttal of new testimony offered by plaintiff, after reopening the case for a limited purpose for plaintiff's rebuttal and surrebuttal thereon by defendant.

TRIAL (83)—INSTRUCTIONS—FORM AND LANGUAGE. In an action for damages to a mill site and boom location by the construction of a railroad, an instruction as to the measure of damages in case waste material placed in the river could be removed, so as to make it a "safe and secure place," is not error, although whether it could have been removed so as to restore it to its former condition was a question for the jury, the defect, if any, being more in words than substance.

[1]Reported in 190 Pac. 226.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered May 27, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for trespass to property. Affirmed.

*Kerr & McCord,* for appellant.

*Ryan & Desmond* and *Coleman & Gable,* for respondent.

BRIDGES, J.—In and prior to July, 1912, respondent owned what it claimed was a valuable mill site on the banks of the Skagit river, in the state of Washington. This site consisted of land on the northerly bank of the river, on which its mill had been previously located, but which, in 1910 or 1911, had been destroyed by fire, and which has not been rebuilt. Its boom for holding logs and shingle bolts was located in the northerly portion of the river and adjacent to the mill and mill site. This boom has been designated a "pocket boom." In order to catch the timber floating down the river from above the mill site, it was necessary to have a "fin" or "sheer" boom; this sheer boom was located in a small cove on the southerly side of the river and opposite the mill site. One end of it was tied to the southerly bank and the other end floated out in the stream, caught logs and bolts and guided them to the other side of the river and into the mouth of the pocket boom. It is claimed that the mill site proper, the pocket boom, and the location for the sheer boom, all combine to constitute an excellent mill site. It appears that there was a point or ledge of rock extending out into the stream which protected the land end or head of the sheer boom from drifting, thus forming an unusually good location for a sheer boom. Respondent also owned the southerly shore of the river where its sheer boom was located. In 1912, the appellant, being desir-.

ous of constructing a railroad up the southerly bank of the river, purchased a right of way therefor from respondent at the point of and above and below the sheer boom. At about the same time an agreement was entered into between the parties which gave to respondent:

"—a right to use and occupy all the shore line along the Skagit river for booming, logging or other purposes and shall have the right to keep its fin booms tied on the stumps it is now attached to or any other structure it may place on such shore line or lands; provided, however, that such occupancy of the shore line and tying and maintaining of said fin boom on said stumps shall not interfere with the construction, operation and maintenance of the railroad of said second party."

After the railroad was built, respondent brought this suit against appellant, claiming damages because the latter had destroyed the contour of the southerly bank of the river and had filled with rock the cove where the sheer boom was located, and, in general, had destroyed the value of the whole mill site. Upon trial there was a verdict for the plaintiff. The defendant appealed to this court, where the various rights of the parties were interpreted and the case reversed and remanded for a new trial. *Clark Lloyd Lumber Co. v. Puget Sound & Cascade R. Co.*, 92 Wash. 601, 159 Pac. 774; *Clark Lloyd Lumber Co. v. Puget Sound & Cascade R. Co.*, 96 Wash. 313, 165 Pac. 94. The second trial resulted in a verdict in favor of the plaintiff in the sum of $5,750, for injury to the whole mill site. Defendant's motion for a new trial was denied and it has again appealed. For a more complete recital of the facts, we refer to the previous decisions of this court.

It is first contended that the verdict is excessive and was given under the influence of passion and preju-

dice. Appellant does not point out anything upon which to base the assertion that the verdict was rendered under the influence of passion and prejudice, except the size of the verdict. The case was very carefully and ably tried by both parties to the suit and by the court. A very large amount of testimony was taken; the jury visited the premises, both at the beginning and at the end of the trial, and the court's instructions were full and complete. The case seems to have been conscientiously and honestly tried by all parties concerned. When it was here the first time, we held that, if the rock could be removed from the cove and the fin boom location restored to its original efficiency, the measure of respondent's damages would be the cost of restoring such situation. But if the situation could not be restored, then the measure of damages would be the difference in the value of the property before and after the work was done. Respondent introduced the testimony of many witnesses on the theory that the situation could not be restored, and also on the theory that the situation could be restored, and the cost of so doing. All of this testimony was met by the testimony of many witnesses produced by the appellant. On the theory that there could not be a restoration of the situation, respondent's witnesses fixed the damage in excess of $10,000, while the witnesses of appellant contended that the mill site had become practically valueless because of a lack of timber and the inability of any person to successfully operate the property, and consequently the damage was practically nothing. On the restoration theory, respondent introduced competent evidence showing the cost to be in excess of $10,000, while appellant's witnesses fixed such sum at less than $1,000. There was a sharp dispute as to the line and nature of the original contour

of the bank of the river, and as to the amount of rock and material which appellant had deposited in the cove and river near the location of the sheer boom. This situation brought about a decided conflict in the evidence, and the chief question was as to the credibility of the witnesses. That such burden rests upon and is peculiarly within the province of the jury and not the court, has been too often decided by this and other courts to need citation of authorities.

In the case of *Seattle & Montana R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, in discussing the question now before us, this court said:

"We do not feel disposed to substitute our own judgment for that of the jury whose duty it is to assess the damage, simply because the amount may seem to us large; especially where there is abundant competent evidence upon which to base the verdict."

In *Fogarty v. Northern Pac. R. Co.,* 85 Wash. 90, 147 Pac. 652, it was said:

"The evidence on this point, however, was conflicting. Its weight and the credibility of the witnesses were for the jury. The trial judge was much better able to determine the weight and credence to be given to this evidence than we are. He refused to grant a new trial. An appellate tribunal should be extremely slow to override the judgment of both the jury and the trial court on a question of fact where there is any evidence to support it."

In *Caldwell v. Northern Pac. R. Co.,* 62 Wash. 420, 113 Pac. 1099, we said:

"The right of trial by jury being a constitutional right, the courts, in law actions, may not take questions of fact away from them and determine such questions for themselves merely because they do not agree with the jury's findings. While we have no doubt of our power to grant new trials where verdicts appear excessive, yet it is a power which should be exercised

within reason, and only where it is reasonably plain that justice will be promoted thereby.''

A careful reading of the record convinces us that there was amply sufficient evidence to support the verdict, and for us now to say that the verdict is excessive would be to usurp the province of the jury.

During the trial the parties, acting through their attorneys, entered into a stipulation to the effect that either party might use certain of the testimony produced at the former trial. After the defendant had closed its case, the plaintiff sought to introduce in rebuttal the testimony of one of the witnesses at the former hearing concerning the amount of material which the defendant had thrown into the river at the cove where the sheer boom was located. The trial court held that such testimony was not proper rebuttal, whereupon the plaintiff moved to reopen the case for the purpose of introducing such testimony. The court permitted this to be done. At the time of so ruling, the court announced that the defendant would be permitted to introduce any evidence in answer to this new testimony of the plaintiff. Thereafter the defendant asked the court to reopen the defense and permit it to introduce the testimony of three witnesses to the effect that they had examined the test holes which had been made previously on the southerly bank of the river and examined the character of the earth and rock and found it to be solid rock. The court held that this testimony did not rebut that introduced by the plaintiff after the reopening of the case, and it refused to reopen the case generally for the admission of this testimony. The appellant now claims error on this account. That appellant's proffered testimony was not surrebuttal and was not in answer to the new testimony given by plaintiff's witnesses, is clear to us. The

only way appellant could put in this testimony was to have the case reopened for that purpose. This the court refused to do. It is manifest that these matters must be left largely within the discretion of the trial court. There cannot be any inherent right to have a case reopened, for, if there were, the trial might never come to an end. In the very nature of things, it is, and must be, a permission, the granting of which rests in the sound judgment and discretion of the court. In this instance we cannot find that the court abused its discretion, or that it erred in its ruling.

Complaint is also made of that portion of the court's instruction No. 3, reading as follows:

"If the plaintiff has been damaged by the deposit of waste material, then your first inquiry will be whether said waste material can be removed so as to return said indenture or cove to a condition which will afford a secure and safe place for the head of said fin boom so as to permit its maintenance and successful operation, and if so, then plaintiff's damages on this element would be the cost of the removing such waste material or debris."

It is claimed that this instruction is erroneous because it left to the jury whether or not the rock which had been deposited in the river could be removed, whereas, the testimony all showed that it could be removed. In the first place, if the testimony was as appellant contends, then certainly no harm could have resulted to it by leaving to the jury the question of whether or not the rock could be removed. However, we find that the plaintiff introduced some testimony tending to show that the rock could not be removed so as to restore the original situation, and it was therefore entirely proper for the jury to determine that question. Appellant further complains that this instruction imposes on it the duty to place the cove in

such condition as that it would be "a safe and secure place" for the operation of the sheer boom, whereas, it was only required to restore the premises to the condition they were in before the damage was done. Probably it would have been better if the court had instructed that it was a question for the jury whether the rock could be removed and thus the premises restored to the condition in which they originally were. However, it is plain to us that the jury could not have been misled. The error, if any, is more of words than of substance. The appellant had deposited rock and other material in this cove, which it was claimed destroyed the use of the sheer boom. In the pleadings, in the testimony, and in the general charge of the court to the jury, the question was whether this material could be so removed as to restore the cove to its former condition and usefulness. At no time was it contended that appellant was under obligation to put the cove in better condition than it was before the damage was done. The question was concerning the removal of the rock which appellant had placed in the cove. And in this instruction, as well as in others, the court mentioned "deposit of waste material" in the cove, and whether "said waste material can be removed." Instructions number five and six gave the jury to understand that the question is whether, by the removal of this rock, the cove can be restored to its former condition and efficiency. Reading this instruction in the light of the pleadings, the testimony, the contentions of the parties, and all the instructions given by the court, we cannot conclude that there was any reversible error.

Appellant also complains that the court refused to give its requested instructions numbers 1, 2, 7 and 8. We have carefully considered these assignments of

error, but do not find any merit in them. All portions of the requested instructions proper to be given were, in substance, given by the court in his own words.

It is claimed that it was error for the court to instruct the jury as follows:

"You are instructed that, under the terms of the deed of right of way and the contract executed by the plaintiff and defendant, the plaintiff as grantor having reserved the right to use and occupy the shore line of the river for booming and logging purposes and maintaining its then existing boom and anchorage, the defendant had no right to injure the boom and anchorage or change the shore line of the river."

The contract mentioned in this instruction is the one from which we have heretofore quoted. Appellant claims that, under the terms of that contract, the respondent was entitled to occupy the shore line, provided such occupancy did not interfere with the construction, operation and maintenance of the railroad. But this contract was otherwise interpreted in the previous appeal. *Clark Lloyd Lumber Co. v. Puget Sound & Cascade R. Co.*, 92 Wash. 601, 159 Pac. 774, where we said:

"Appellant contends that, having a deed to the right of way, it had a superior right to construct its road in the manner in which it did, and that the rights of respondent are subservient and subordinate to it. The right to invade the property right of respondent is not given by the deed, nor does a fair construction of the contract sustain it. The right reserved by respondent was to use and occupy the shore line in the manner in which it was then used. It would have had this right without any contract. This right is not destroyed by the further provision of the contract that such occupancy shall not interfere with the construction, operation and maintenance of the railroad by appellant. The contract must be construed by reference to its whole context."

We do not find any material error, and the judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and TOLMAN, JJ., concur.