[No. 37741.  Department Two.  June 30, 1966.]

DAN FALCONE et al., *Respondents*, v. SAM PERRY et al., *Appellants.**

*Lycette, Diamond & Sylvester* and *Ralph M. Bremer*, for appellants.

*Abbey & MacFarland, Vincent H. D. Abbey, Parker & Borawick*, and *Myron L. Borawick*, for respondents.

LANGENBACH, J.†—The executors of an estate brought this action to recover damages to a house caused by a run-away truck. The jury returned a verdict of $4,095 for plaintiffs (respondents). The defendant truck driver is

*Reported in 416 P.2d 690.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

hereinafter referred to as if he were the sole appellant. The main question is the amount of damages.

On August 5, 1961, appellant's employer requested him to drive a tractor with a flat bed trailer to a certain boat shop, load a hydroplane and deliver it to the Gold Cup races. Appellant proceeded to the boat shop. He parked the truck parallel to the curb of a street with a 30 per cent grade, in a position to load the hydroplane, with the engine running. The handbrake was set, the airbrakes were operating and the appellant had the foot pedal depressed. Also, another person placed a 6 by 8 timber, 12 feet long, behind the rear wheels as additional security.

When appellant noticed difficulty in loading the hydroplane, he left the cab of his truck to help. The truck engine died, causing the air brakes to lose pressure. The truck rolled backwards over the timber down the street into respondents' house, causing extensive damage.

The house had been built in 1906. It had three bedrooms, a dining room, a living room, a large kitchen, pantry, bath and ¾ basement. It contained 1,056 square feet of floor space. Since 1951, the house had been rented. At the time of the accident, the rent was $47.50 a month. On the rear of the lot was a concrete block shop rented for $110 a month. The house was located in a manufacturing zone which was established in 1958. It had not been repaired since the accident and was vacant at time of trial. (The house had been kept in repair from year to year at nominal expense.)

In proving their damages, respondents produced an expert witness who appraised the house from three angles: income approach at $6,000; cost less depreciation approach at $4,241; and under the comparative market data approach at $4,000.[1] Another witness testified that the house could be repaired for $4,400 plus $176 sales tax.

---

[1]The basic formulas were:

(1) *Income approach* is taking a known income and capitalizing the known income with appropriate capitalization rate, which gives an answer in the sum of dollars which is the value of the property. Since the house in question was located in a manufacturing zone, an allow-

A real estate broker appraised the house at $6,000 and gave the house a useful life of 22 years.

The appellant's appraiser used the fair market value approach. He stated the property was in a manufacturing zone, which was its highest and best use. The value before the accident was $28,000 and the value after was $27,600—the difference being the cost of removal of the house. The house itself was a detriment to the lot and did not add any value to it. It was a legal nonconformity on the lot. The appellant's expert testified that the damage was only $400, the cost of further demolition and removal of the entire house. According to appellant's brief, his expert arrived at this figure as follows:

> The gross rental was computed, less an allowance for vacancy and credit loss, less taxes and owner's expenses, and *less a reserve for what the land should earn if it was improved to its highest and best use*, with the conclusion arrived at that the dwelling had no value, since the rental income was not adequate to pay what the land should earn. (Italics ours.)

There were seven assignments of error: (1) the court erred in admitting testimony concerning the assumption of severability of house from the lot and so valued; (2) in failing to strike such testimony; (3) in limiting cross-examination of respondent; (4) in giving instruction No. 13, on issue of damages; (5) in failing to give appellant's proposed instruction No. 4; (6) in denying motion for new trial; and (7) entering judgment on the verdict.

Assignments 1, 2, 4, 6 and 7 were argued together. Appellant conceded liability and the sole question was the amount of damages. In his brief was stated:

> Upon the trial of this matter, both parties regarded the proper measure of damages as the cost of repairs to

---

ance was made under the substitute site theory, *i.e.*, as if the house was on a lot zoned single family residence.

(2) *Cost less depreciation approach* is theory that the building is replaced and then depreciation is applied to the replacement cost.

(3) *Comparative market value approach* is comparing with nature of other property located in the same area which was sold within a relatively close period of time.

the building, or the diminution in value of the plaintiff's property, whichever were the lesser.

The respondents' evidence placed a valuation upon the house by three different methods of appraisal. It was the valuation of this house separate from the valuation of the lot on which it rested which was the target of the first two assignments of error.

The essence of instruction No. 13, to which an exception was taken, was as follows:

The measure of damages with reference to the plaintiffs' property in this case is the entire cost of restoring the damage to return the property to its former condition unless the cost exceeds the diminution in value as a result of the accident, in which event the measure of damages would be the difference between the fair cash market value of the plaintiffs' property immediately before and immediately after the accident. You must adopt as the measure of damages the lesser of the two amounts, the cost of repair or the diminution in value as I have instructed you.

If you find the plaintiffs' building could be restored to its former condition, then you may take into account in determining plaintiffs' damages the cost of restoration of the building and such loss of rent, if any, as you find plaintiffs may have sustained during the time when, with reasonable diligence, the building could have been restored to its former condition.

This instruction followed the concession set forth from appellant's brief, *supra*. Moreover, it followed the rule of law laid down in the cases relied on by appellant. *Burr v. Clark*, 30 Wn.2d 149, 158, 190 P.2d 769 (1948): "In the case of real property, where the injury is only temporary, and the property can be restored to its original condition at a reasonable expense and at a cost less than the diminution in the value of the property, the general rule for the measure of damages is the cost of restoration." In this case was quoted the general rule from a Nebraska case as follows:

"Property such as fences, parts of buildings, and machinery, and furnaces, is capable of being replaced, and the proper measure of damages for the destruction

thereof is the cost of restoring or replacing such property. . . . If the property destroyed has no value separate and apart from the realty, the measure of damages for property destroyed is the difference between the value of the real estate before the injury and after the injury. But as to the destruction of property which is a part of the real estate, whose destruction does the realty itself no damage and is capable of being repaired or replaced, the measure is the cost of repairing or restoring the same."

The appellant also cited *Hogland v. Klein*, 49 Wn.2d 216, 220, 298 P.2d 1099 (1956) (where a house was damaged while being moved). It quoted the general rule from 15 Am. Jur. § 113, p. 524 as follows:

"The owner is entitled to recover the entire cost of restoring a damaged building to its former condition unless such cost exceeds its diminution in value as the result of the injury, in which event the recovery must be limited to the amount of such diminution. Under this rule the court should receive evidence both as to the cost of restoring the building and as to the amount of its diminished value, and then adopt as the measure of damages the lesser of the two amounts."

These claims of error were not sustained.

Appellant's fifth assignment of error is that the court failed to give his proposed instruction No. 4, the material part of which is as follows:

In this case the measure of damage to the plaintiffs would be the difference between the fair cash market value of the plaintiffs' property immediately before and immediately after the accident.

This proposed instruction conflicted with the concession of the appellant: that the proper measure of damages was the cost of repairs *or* the diminution in value of the property, whichever was the lesser. It was also at variance with the rules laid down in the two cases relied on by appellant, quoted above.

The third assignment of error was that the court erred in limiting the cross-examination of one executor. He had testified that the house had not been repaired as the estate

was unable financially to repair it. On cross-examination, he was asked:

Q. Now, Mr. Falcone, you stated that the estate did not have sufficient funds to repair this house, is that correct?

A. Correct.

Q. Did you investigate the possibility of borrowing money?

MR. ABBEY: Objection, your Honor. Too conjectural. It is irrelevant really.

THE COURT: Sustained.

During the colloquy which followed, the court said: "Well, just because something got in without an objection being made doesn't mean we can keep on piling immaterial evidence on top of immaterial evidence."

The consideration before the jury was the cost of repairs and the market value of this property, not whether it had been repaired. The court ruled that the entire inquiry had been immaterial. There is no merit in this contention.

■ Appellant contended an allowance should have been made for the house being on a lot zoned for manufacturing purposes by determining the market value as if respondents were making the highest and best use of the lot according to zoning regulations. On such a basis the house would be valueless. The difficulty with appellant's theory is that it would require respondents to make optimum financial use of their property notwithstanding their desire to do otherwise. Respondents' use of their lot was a legal one, *i.e.*, a nonconforming use. That the house had substantial value is shown by the fact that for years it had been producing considerable rentals with very little repair.

Lastly, appellant asserted the jury verdict of $4,095 was not supported by the evidence. The verdict was based upon the cost of repairs plus 2 months' rent. In his brief, appellant stated: "While it does not appear from the record, post-trial conversations with jurors indicated that they allowed a repair cost of $4,000.00, plus exactly two months' rent at $47.50 per month . . . ."

We cannot consider what is not in the record. See RCW 4.80.050. There was ample proof to sustain the verdict. There was no error.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.