[No. 48419-2-I.   Division One.   June 16, 2003.]

GLENN THOMPSON, ET AL., *Respondents*, v. KING FEED & NUTRITION SERVICE, INC., *Appellant*.

---

[25] *See* 29 U.S.C. § 206(a)(4).

*Theodore H. Millan* (of *Hackett Beecher & Hart*), for appellant.

*Nigel S. Malden* (of *Davies Pearson, P.C.*), for respondents.

Cox, A.C.J. — King Feed & Nutrition Service, Inc., appeals an adverse judgment on a jury verdict for $300,000 for its negligent destruction by fire of Glenn and Janice Thompson's barn. A proper measure of damages for destruction of improvements on real property where the land itself is not damaged is the reasonable cost of restoration of those improvements, provided the injured party is made whole without receiving a windfall.[1] The trial court properly granted the Thompsons' motion for judgment as a matter of law as to the proximate cause of the fire. And the trial court did not abuse its discretion in granting CR 37(c) sanctions against King Feed for its failure to admit certain requests to admit during discovery. There being no other prejudicial error, we affirm.

---

[1] *Burr v. Clark*, 30 Wn.2d 149, 158, 190 P.2d 769 (1948); *see Pugel v. Monheimer*, 83 Wn. App. 688, 692, 922 P.2d 1377 (1996) (citing *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 543-44, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994), *overruled on other grounds by Phillips v. King County*, 87 Wn. App. 468, 943 P.2d 306 (1997)), *review denied*, 131 Wn.2d 1024 (1997).

In July of 1998, the Thompsons agreed to rent their barn to William Meiser of King Feed for the purpose of storing baled hay collected from the Thompson farm and surrounding properties. Meiser hired hay cutters and balers, and oversaw the operation. The Thompsons were not involved in any aspect of the operation other than renting their barn as the storage site for the hay. The dry hay was stored on the second story of the barn. Wet hay was stored outside on the north wall of the barn under a lean-to roof. In August 1998, the hay on the north wall caught fire, and the barn and its contents were destroyed.

The Thompsons sued King Feed, claiming that the company was negligent in failing to properly and safely store hay next to and in their barn. King Feed generally denied the allegations, and raised the affirmative defense that the Thompsons may have been comparatively negligent for the loss by fire.

During discovery, the Thompsons sent requests to admit to King Feed. The company denied the requests, stating in some of its responses that "discovery and investigation are continuing."

Pretrial, the trial judge denied King Feed's motion in limine to restrict any evidence of restoration costs of the barn and to adopt diminution in value as the sole measure of damages. During trial, the court admitted evidence of the differential in market value of the property before and after the fire as well as restoration cost of the barn. After the close of King Feed's case, the Thompsons moved for a directed verdict on negligence. The trial judge partially granted the motion, directing a verdict solely on the issue of proximate cause of the fire. The court submitted the remaining issues to the jury.

The jury returned a verdict for the Thompsons for $300,000, and the court entered judgment on that verdict. Posttrial, the court awarded the Thompsons CR 37(c) expenses for King Feed's failure to admit certain requests to admit.

King Feed appeals the judgment on the jury verdict and the order on expenses.

## MEASURE OF DAMAGES

■ King Feed's basic argument is that the court improperly rejected the company's proposed measure of damages instruction based on 6 *Washington Pattern Jury Instructions: Civil* 30.11 (4th ed. 2002) (WPI). That pattern instruction mandates the use of the "lesser than" rule as the measure of damages under certain circumstances. This argument is unpersuasive, and we reject it.

Turning first to King Feed's argument that WPI 30.11 accurately states the law on damages for the barn in this case, we hold that the pattern instruction is not applicable to the destruction of the improvements to real property that is at issue in this case. A plain reading of that pattern instruction shows that it is inapplicable here:

> Measure of Damages—Damage to Personal Property—Repairs or Difference in Value Before and After Damage
>
> The lesser of the following:
>
> 1. The reasonable value of necessary repairs to any property that was damaged; or
>
> 2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash market value of the unrepaired property immediately after the occurrence.

Specifically, the heading to the instruction plainly states it is the measure of damages for *personal* property. Moreover, the "Note On Use" for this pattern instruction expressly states its inapplicability to "real estate or improvements thereon."[2] Because the barn is an improvement to real estate, not personal property, the use of this proposed pattern instruction was not warranted in this case. The

---

[2] "This instruction may not be appropriate for damages to real estate or improvements thereon." 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 30.11, at 301 (4th ed. 2002).

court properly rejected King Feed's proposed instruction based on WPI 30.11.

■ Rather, *Burr v. Clark*, 30 Wn.2d 149, 190 P.2d 769 (1948), articulates the applicable rule for this case. There, the Supreme Court was faced with the question of what measure of damages applied to compensate an owner for damages to a residential boiler. It was damaged due to the negligence of the defendant's employee while making repairs. The trial court awarded damages equal to the cost of replacing the boiler with a new one. The Supreme Court set forth the measure of damages applicable to tort actions as follows:

> The measure of damages in tort actions is that indemnity which will afford an adequate compensation to a person for the loss suffered or the injury sustained by him as the direct, natural, and proximate consequence of the wrongful act or omission.

> The rule for the measurement of damages for injury to property, generally, is the same as that applicable to torts generally.

> In the case of real property, where the injury is only temporary, and the property can be restored to its original condition at a reasonable expense and at a cost less than the diminution in the value of the property, the general rule for the measure of damages is the cost of restoration.

> The general rule is well stated in *Koyen v. Citizens Nat. Bank*, 107 Neb. 274, 185 N.W. 413, [414 (1921),] as follows:

> "Property such as [ . . . ] parts of *buildings* [ . . . ] is capable of being replaced, and the proper measure of damages for the destruction thereof is the cost of restoring or replacing such property. If the property destroyed has no value separate and apart from the realty, the measure of damages for property destroyed is the difference between the value of the real estate before the injury and after the injury. *But as to the destruction of property which is a part of the real estate, whose destruction does the realty itself no damage and is capable of being repaired*

*or replaced, the measure is the cost of repairing or restoring the same.*"[3]

It is noteworthy that in *Burr* our state Supreme Court cited two of its prior decisions, *Koch v. Sackman-Phillips Investment Co.,*[4] and *Clark Lloyd Lumber Co. v. Puget Sound & Cascade Railway Co.,*[5] as being consistent with its quotation of the rule stated in *Koyen*, the Nebraska case. Both of those prior Washington decisions specifically provided for the use of restoration costs as the measure of damages for destruction of improvements to real property. Thus, subject to limitations of adequately compensating the victim for destruction of improvements to real property and consideration of the diminution in value of property due to destruction, the cost to restore the improvements is the general rule for the measure of damages.

King Feed's reliance on *Hogland v. Klein*[6] to support its argument that a "lesser than" rule controls here is misplaced. There, Hogland Transfer Company sued the owner of a building with whom it had contracted for payments due for moving the building.[7] The owner counterclaimed for damages to the building during the move.[8] The move required the building to be divided into two parts. The first part was transferred without incident. But the second part of the building was demolished when one of the supporting timbers supplied by Hogland broke.[9] When the Supreme Court addressed the question of damages on the owner's counterclaim, it stated that the trial court had found that the value of the damaged portion of the building before the accident was $1000; that immediately after the accident it was $100; and that the cost of repairing the building "far

---

[3] *Burr*, 30 Wn.2d at 158 (emphasis added) (citations omitted).

[4] 9 Wash. 405, 37 P. 703 (1894).

[5] 92 Wash. 601, 159 P. 774 (1916), *rev'd on reh'g*, 96 Wash. 313, 165 P. 94 (1917).

[6] 49 Wn.2d 216, 298 P.2d 1099 (1956).

[7] *Hogland*, 49 Wn.2d at 217.

[8] *Hogland*, 49 Wn.2d at 217.

[9] *Hogland*, 49 Wn.2d at 218.

exceeded its actual value prior to the accident."[10] The trial court had adopted a measure of damages that permitted the award of the differential in value of the building rather than its cost of repair. The Supreme Court approved that measure of damages for the case.

Whatever value that case may have for stating the measure of damages for a damaged portion of a building falling from timbers during a move, it does not mandate that damages for the improvements to realty here be the lesser of restoration costs versus the differential in market value of the property before and after the fire loss. The Supreme Court indicated in *Hogland* that the cost of repair "far exceeded" the market value of the building prior to the loss. Here, the appraisal evidence established that the fair market value of the barn was $300,000. The cost analysis segment of the appraisal indicated the cost of restoration at $500,000, some $200,000 more. Other evidence indicated the diminution in value of the property due to the loss of the barn was in the $100,000 - $110,000 range. On this record, we do not view the $200,000 differential between the $300,000 market value of the barn and the $500,000 cost of restoration to be so great as to require the imposition of a ceiling of $110,000 on damages, as the *Hogland* court did in its analysis. This is particularly true in view of the fact that the jury heard all the evidence, and rendered its verdict of $300,000 in damages—less than the full cost of restoration. There is nothing to suggest that the verdict represents a windfall to the Thompsons—the $300,000 verdict is precisely the amount to which an expert testified as the fair market value of the barn before destruction.

One other Supreme Court case is instructive, *Falcone v. Perry*.[11] There, a runaway truck rolled backwards down the street into a house, causing extensive damage.[12] The company that owned the truck conceded liability and the

---

[10] *Hogland*, 49 Wn.2d at 220.

[11] 68 Wn.2d 909, 416 P.2d 690 (1966).

[12] *Falcone*, 68 Wn.2d at 910.

question was the proper amount of damages. The total repair cost estimate was $4,576.[13] But the diminution in value of the property was merely $400.[14] The trial court instructed the jury that the measure of damages was the cost of restoration "unless the cost exceeds the diminution in value as a result of the accident, in which event the measure of damages would be the difference between the fair cash market value of the plaintiffs' property immediately before and immediately after the accident."[15] Nevertheless, the jury rendered a verdict of $4,095, which was over 10 times the diminution in value that occurred as a result of the damage. On appeal, the Supreme Court sustained the jury verdict, after citing both *Hogland* and *Burr* as the cases supplying the appropriate rules for the case.[16]

Considering this line of Supreme Court cases, we conclude that none requires the imposition of a "lesser than" rule in this case. Rather, compensation that is adequate to compensate the plaintiff without providing a windfall is what is required. Here, as in *Falcone*, the estimate to restore the property after the fire damage exceeded the diminution in value of the property as a result of the fire. Likewise, the jury in each case rendered a verdict less than the full cost of restoration. In neither case was the cost of restoration disproportionate to the value of the property before the loss. Finally, there is nothing to suggest a windfall in either case.

Although King Feed argues otherwise, *DeYoung v. Swenson*[17] does not support a different result. It is consistent with the above line of Supreme Court cases.

In *DeYoung*, the negligent burning of debris by the defendant on his own land led to the destruction of plain-

---

[13] *Falcone*, 68 Wn.2d at 910.

[14] *Falcone*, 68 Wn.2d at 911.

[15] *Falcone*, 68 Wn.2d at 912.

[16] *Falcone*, 68 Wn.2d at 912-13.

[17] 6 Wn. App. 452, 493 P.2d 1247 (1972).

tiff's barn, which was located on an adjacent lot. As to the proper measure of damages, the court stated:

> Where the wrong consists in the removal or destruction of some addition, fixture or part of real property, the loss may be estimated upon the diminution in the value of the premises, if any results; or upon the value of the parts severed or destroyed, and *that valuation should be adopted which will prove most beneficial to the injured party, as he is entitled to the benefit of his property intact.*[18]

Applying that rule to the facts of the case, the court awarded the restoration costs of the destroyed barn to the plaintiff. The court did not impose any restriction based on diminution in value of the property as the result of the fire, saying, "the award was reasonable and logically related to [the] market value" of the property.[19]

King Feed also contends that *Pepper v. J.J. Welcome Construction Co.*, 73 Wn. App. 523, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994), *overruled on other grounds by Phillips v. King County*, 87 Wn. App. 468, 943 P.2d 306 (1997), supports its position. We disagree.

King Feed quotes a portion of that decision:

> Washington courts have consistently applied the "lesser-than" rule in fixture cases where the damaged real property is affixed to land. In those cases "where the injury is only temporary, and the property can be restored to its original condition at a reasonable expense and at a cost less than the diminution in the value of the property, the general rule for the measure of damages is the cost of restoration."[20]

King Feed also quotes a footnote to the opinion: "For purposes of clarity, we note that the 'lesser than' rule is alive and well as applied to fixture cases, such as fences,

---

[18] *DeYoung*, 6 Wn. App. at 454 (emphasis added).

[19] *DeYoung*, 6 Wn. App. at 454.

[20] *Pepper*, 73 Wn. App. at 541 (quoting *Burr*, 30 Wn.2d at 158).

buildings, etc., but not in cases where the injuries are to the land itself."[21]

Notwithstanding the above quotations, the *Pepper* court, when considering the reasonableness of the cost to restore damaged property, also stated: "[t]he fact that the cost of restoring property to its prior condition exceeds the amount by which the land's value has been diminished does not necessarily make those repair costs unreasonable."[22] Among the authorities that the *Pepper* court cites in support of this principle is *Falcone*, the case we discussed previously in this opinion. Thus, the Supreme Court has approved the award of restoration costs even when such costs exceeded the diminution in value of the damaged property in order to provide adequate compensation to the victim without also providing a windfall. Thus, *Pepper* is of no help to King Feed.

Based on the Supreme Court authority of *Falcone* and *Burr*, we conclude that there was no requirement in this case to impose a limit on damages equivalent to the alleged $100,000 diminution in value of the barn. There was no evidence of windfall here. Thus, application of the "lesser than" rule as a ceiling to damages for King Feed's destruction of the Thompsons' barn by fire was not required.

We affirm the judgment and order.

The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

COLEMAN and GROSSE, JJ., concur.

Review granted at 151 Wn.2d 1008 (2004).

---

[21] *Pepper*, 73 Wn. App. at 542 n.12.

[22] *Pepper*, 73 Wn. App. at 544.