105 P.3d 378 (2005)
153 Wash.2d 447
Glenn THOMPSON and Janice Thompson, husband and wife, Respondents,
v.
KING FEED & NUTRITION SERVICE, INC., a Washington Corporation, Appellant.
No. 74280-4.
Supreme Court of Washington, En Banc.
Argued June 30, 2004.
Decided January 20, 2005.
*379 James Morton Beecher, Seattle, for Appellant.
Nigel Stephen Malden, Tacoma, for Respondents.
IRELAND, J.[*]
In this case we consider whether the trial court erred in its jury instruction as to the proper measure of damages for the negligent destruction of a barn and whether the trial court abused its discretion in granting sanctions under CR 37(c). We hold that the trial court's instruction was not prejudicial or erroneous. We therefore affirm the Court of Appeals. As to the issue of sanctions, the opinion of the court is reflected in the dissent, which holds that the trial court abused its discretion and vacates the order imposing sanctions.

FACTS
Glenn and Janice Thompson (Owners) own a 15 acre parcel of land in Enumclaw, Washington. In June 1998, Owners agreed to rent the barn on the property to King Feed & Nutrition Service, Inc. (King Feed) for storing hay cut from Owners' and other properties in the local area. On August 27, 1998 the barn was completely destroyed by fire. The cause of the fire was determined to be spontaneous combustion due to the negligent storage of wet hay. Liability as to the cause of the fire is not in dispute on appeal.
In October 1999, Owners brought suit to recover the cost of replacing the barn. During discovery, Owners sent King Feed a request for admission to admit negligence and proximate cause and to admit that Owners were not contributorily negligent or comparatively at fault. King Feed denied all requests for admission and raised the affirmative defense that Owners may have been comparatively at fault.
*380 At trial, Owners called several experts to testify as to the value of the barn. A real estate agent estimated the rental value of the barn to be at least $2,500 per month and the value of the barn itself to be $400,000. A general contractor estimated the cost of rebuilding the barn to be more than $500,000. A real estate appraiser estimated that the "barn contributed a value of $300,000 more or less" to Owners' property. Verbatim Report of Proceedings (VRP) at 285. The appraiser also estimated that the cost of replacing the barn would be between $485,000 and $500,000. In response, King Feed called one witness, a real estate sales associate, who testified that the barn added $100,000 to $110,000 to the value of Owners' property.
The jury awarded Owners $300,000. In a posttrial motion, Owners requested the trial court to "order defendant to partially reimburse" Owners' reasonable attorneys fees and costs as sanctions for discovery violations under CR 37(c) and/or CR 26(g) and RCW 4.84.185. Clerk's Papers (CP) at 134. The trial court granted Owners' motion under CR 37(c) and ordered King Feed to pay an additional $19,434. The court specifically noted that not every item related to negligence and causation is reimbursable. Rather, reimbursement is limited to the costs associated with the time period after which a reasonable person in King Feed's position should have conceded the issues.
The Court of Appeals affirmed the trial court in a partially published opinion, holding that (1) the trial court did not err by refusing to give King Feed's proposed instruction on damages, (Thompson v. King Feed & Nutrition Serv., Inc., 117 Wash.App. 260, 70 P.3d 972 (2003)), and (2) the trial court did not abuse its discretion in granting CR 37(c) sanctions against King Feed for its failure to admit certain matters in the requests for admission propounded by Owners during discovery. Id. at 261, 70 P.3d 972.
In addition, Owners requested an award of additional attorney fees and costs incurred on appeal under CR 37(c) and RAP 14.1-14.4. The Court of Appeals denied this request because none of the cited provisions support such an award. Thompson, No. 48419-2-I, slip op. (unpublished portion) at 21, 2003 WL 21377695 at *10.

ISSUES
The following issues have been raised on appeal:
1. Did the trial court err in rejecting WPI 30.11 (6 Washington Pattern Jury Instructions: Civil (4th ed.2002)) as the proper measure of damages instruction for the negligent destruction of a building?
2. Did the trial court abuse its discretion in granting sanctions against King Feed under CR 37(c)?
3. Should Owners be awarded additional attorney fees and costs incurred on appeal pursuant to CR 37(c) and RAP 14.1-14.4?

ANALYSIS

1. Did the trial court err in rejecting WPI 30.11 as the proper measure of damages instruction for the negligent destruction of a building?
Jury instructions are reviewed de novo, and an instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265, 22 P.3d 791 (2000). Jury instructions are sufficient when they allow counsel to argue their theories of the case, do not mislead the jury, and when taken as a whole, properly inform the jury of the law to be applied. Id. A clear misstatement of the law, however, is presumed to be prejudicial. Keller v. City of Spokane, 146 Wash.2d 237, 249-50, 44 P.3d 845 (2002).
King Feed contends that the Court of Appeals' affirmation of instruction 8 is "an erroneous statement of the applicable law on damages." Pet. for Review at 15. Jury instruction 8 provides, in relevant part:
If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.
*381 If you find for the plaintiff, you should consider the following factors:
1. The value the barn added to the plaintiff's property immediately before the fire;
2. The fair market value of the barn;
3. The fair rental value of the barn;
4. The reasonable cost to replace the barn if you find:
a. that there is reason personal to the owner for replacing the barn or
b. where there is reason to believe that the plaintiff will replace the barn to its original condition,
and you find that the cost of replacing the barn, although it may be greater than the value added to the property by the barn, is not unreasonably disproportionate to the diminution in market value of the property because of the loss of the barn.
CP at 99.
King Feed maintains the court should have given proposed jury instruction D6.[1] According to King Feed, proposed instruction D6 was based upon WPI 30.11 and contained an accurate statement of the applicable measure of damages based on Hogland v. Klein, 49 Wash.2d 216, 298 P.2d 1099 (1956). WPI 30.11 states that the measure of damages to personal property should be the lesser of:
1. The reasonable value of necessary repairs to any property that was damaged; or
2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash marked value of the unrepaired property immediately after the occurrence.
In addition to Hogland, King Feed relies upon the cases Pepper v. J.J. Welcome Construction Co., 73 Wash.App. 523, 871 P.2d 601 (1994), DeYoung v. Swenson, 6 Wash.App. 452, 493 P.2d 1247 (1972), and Falcone v. Perry, 68 Wash.2d 909, 416 P.2d 690 (1966) to support the contention that the "lesser than" rule is correctly applied when a barn is negligently destroyed by fire.
In response, Owners argue that instruction number 8 was proper and that the "lesser than" rule is inapplicable to this case. In support, Owners point to the "Note on Use" that accompanies WPI 30.11, which states: "This instruction may not be appropriate for damages to real estate or improvements thereon." WPI 30.11. They also argue that under the general rule stated in Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769 (1948), they were entitled to ask the jury to award the cost of restoring the barn. Lastly, Owners distinguish both DeYoung and Pepper.
We find that WPI 30.11, the "lesser than" rule, is inapplicable in circumstances involving negligent destruction of a building. In addition to the Note on Use cited by Owners, a careful reading of the cases cited by King Feed illustrates that WPI 30.11 applies to situations in which property is damaged, not destroyed.
In Hogland, the owner of a house contracted with a company to have the house moved to a new location. The move required separating the house into two sections. The first section was moved without incident, but the second section was damaged when one of the supporting timbers fractured. The trial court, quoting 15 American Jurisprudence § 113, at 524, applied the "lesser than" rule:
"The owner is entitled to recover the entire cost of restoring a damaged building to its former condition unless such cost exceeds its diminution in value as the result of the injury, in which event the recovery must be limited to the amount of such diminution. Under this rule the court should receive evidence both as to the cost of restoring the building and as to the amount of its diminished value, and then *382 adopt as the measure of damages the lesser of the two amounts."
Hogland, 49 Wash.2d at 220, 298 P.2d 1099. We affirmed the "lesser than" rule as the proper measure of damages for the damaged portion of the house. Id.
In Falcone, the executors of an estate sued to recover damages from a truck driver whose runaway truck struck and damaged a home. We approved a jury instruction based upon the "lesser than" rule:
"The measure of damages with reference to the plaintiffs' property in this case is the entire cost of restoring the damage to return the property to its former condition unless the cost exceeds the diminution in value as a result of the accident, in which event the measure of damages would be the difference between the fair cash market value of the plaintiffs' property immediately before and immediately after the accident. You must adopt as the measure of damages the lesser of the two amounts, the cost of repair or the diminution in value as I have instructed you.
"If you find the plaintiffs' building could be restored to its former condition, then you may take into account in determining plaintiffs' damages the cost of restoration of the building and such loss of rent, if any, as you find plaintiffs may have sustained during the time when, with reasonable diligence, the building could have been restored to its former condition."
Falcone, 68 Wash.2d at 912, 416 P.2d 690.
In Pepper, the landowners brought suit after observing increased run-off and sedimentary deposits on their land allegedly due to the clearing and grading of a neighboring plat of land. Pepper, 73 Wash.App. at 528, 871 P.2d 601. The trial court limited the damage award to the lesser of restoration costs or the diminution in value of the property. Pepper, 73 Wash.App. at 541, 871 P.2d 601. The property owners appealed contending the proper measure of damages for injuries to land, where the land is capable of being restored to its former condition, is restoration costs. Id. The Court of Appeals agreed. Id. Only in dicta did the court state, "Washington courts have consistently applied the `lesser-than' rule in fixture cases where the damaged real property is affixed to land." Id.
Hogland, Falcone, and Pepper affirm our conclusion that prior case law holds the "lesser than" rule is limited to situations where property is damaged and capable of repair. None of these cases support the contention that the "lesser than" rule should be applied when a building is completely destroyed.
King Feed also relies on DeYoung. In DeYoung, the defendant's negligent burning of debris on his land led to the destruction of his neighbor's barn. The Court of Appeals stated the proper measure of damages as:
Where the wrong consists in the removal or destruction of some addition, fixture or part of real property, the loss may be estimated upon the diminution in the value of the premises, if any results; or upon the value of the parts severed or destroyed, and that valuation should be adopted which will prove most beneficial to the injured party, as he is entitled to the benefit of his property intact.
DeYoung, 6 Wash.App. at 454, 493 P.2d 1247. The Court of Appeals then affirmed the trial court's award of $12,000 for lost storage space. Id.
DeYoung does not support King Feed's argument for two reasons. First, the measure of damages articulated in DeYoung concerns calculating recovery of lost storage space, not for recovery of the building itself. As the Court of Appeals stated, "[t]he $12,000 award does not therefore represent the cost of replacing the identical building but rather the cost of replacing lost storage space to which plaintiff is entitled." Id. Second, the DeYoung court did not apply the "lesser than" rule. While DeYoung did state the loss may be estimated upon the diminution in value or upon the value of the parts severed or destroyed, the rule was not limited to the lesser of the two amounts. On the contrary, the proper valuation was the one that proved most beneficial to the injured party. Id.
King Feed also claims that the Court of Appeals' affirmation of jury instruction 8 in this case was prejudicial. King Feed argues that if the jury had been instructed pursuant *383 to the "lesser than" rule, it would not have awarded $300,000, which exceeds the diminution in value of the whole property by $200,000. Pet. for Review at 16. King Feed appears to base this claim on the testimony of its expert who stated that the diminution in value of the entire 15 acre parcel of land after the destruction of the barn was $100,000. As stated, we disagree with King Feed's contention that the "lesser than" rule is the correct measure of damages. We also disagree with King Feed's interpretation of the "lesser than" rule.
As we articulated in Hogland, the general "lesser than" rule is: "`The owner is entitled to recover the entire cost of restoring a damaged building to its former condition unless such cost exceeds its diminution in value as the result of the injury, in which event the recovery must be limited to the amount of such diminution.'" Hogland, 49 Wash.2d at 220, 298 P.2d 1099 (quoting 15 Am.Jur. § 113, at 524). Under this rule, an owner is entitled to recover the entire cost of restoring a damaged building to "its" former condition unless those costs exceed "its" diminution in value. Both of the "its" in this rule distinctly refer to the damaged building, not the entire parcel of property the building was located upon as King Feed would have us hold in this case.
Similarly, a close analysis of WPI 30.11 yields the same result. To reiterate, WPI 30.11 states that the measure of damages to personal property should be:
1. The reasonable value of necessary repairs to any property that was damaged; or
2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash marked value of the unrepaired property immediately after the occurrence.
WPI 30.11 (emphasis added). As was the case with "its" in the general formulation of the "lesser than" rule articulated in Hogland, the term "property" in WPI 30.11 refers to the individual piece of personal property that was damaged, such as a vehicle. The term "property" does not include any uninjured real property the personal property may be attached to. Thus, WPI 30.11's references to "property" do not support a calculation of diminution based upon the entire 15 acre parcel of land.
WPI 30.11 does not apply for two additional reasons. First, the title of WPI 30.11 states that it is intended as a measure of damages for personal property. Second, the Note on Use specifically states, "This instruction may not be appropriate for damages to real estate or improvements thereon." Id. The "lesser than" rule does not apply in the case of negligent destruction of a building, nor does it apply to the diminution in value of an entire parcel of real estate.
We also conclude that the jury's award of $300,000 does not indicate any prejudice and was proper under the instructions given. "The purpose of awarding damages in cases involving injury to real property is to return the injured party as nearly as possible to the position he would have been in had the wrongful act not occurred." 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 5.2, at 126 (2d ed.2000). In addition, when awarding damages for an action concerning real property, "[t]he decision as to which measure of damages to apply is one left to the trier of fact." Id. Testimony at trial estimated the fair market value of the barn to be $300,000, and the replacement cost of the barn to be more than $500,000. Under the evidence presented, instruction 8 resulted in a jury award that is a reasonable estimate of the amount necessary to put Owners in the position they would have been in had the wrongful act not occurred. King Feed was not prejudiced by the giving of instruction 8.

2. Did the trial court abuse its discretion in granting sanctions against King Feed under CR 37(c)?
King Feed argues that the trial court abused its discretion in granting sanctions under CR 37(c) for King Feed's failure to admit certain matters in the requests for admission propounded by Owners. Owners argue the scope of their RFAs were proper under CR 36(a), which states that requests for admission may cover "any matters within the scope of rule 26(b) set forth in the request *384 that relate to statements or opinions of fact or of the application of law to fact." CR 36(a).
We review a trial court's decision to impose discovery sanctions under CR 37(c) for an abuse of discretion. Rivers v. Wash. State Conference of Mason Contractors, 145 Wash.2d 674, 684, 41 P.3d 1175 (2002). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993).
CR 37(c) provides that if a party fails to admit the truth of any matter as requested under a CR 36 request for admission, and the matter is subsequently proved, the party may apply to the trial court for an order requiring the other party to pay reasonable expenses incurred in making that proof, including attorney fees. The trial court may then order payment unless it finds that:
(1) the request was held objectionable pursuant to rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe the fact was not true or the document was not genuine, or (4) there was other good reason for the failure to admit.
CR 37(c).
The purpose of requests for admission is to eliminate from controversy factual matters that will not be disputed at trial. Santos v. Dean, 96 Wash.App. 849, 861, 982 P.2d 632 (1999); Brust v. Newton, 70 Wash.App. 286, 295, 852 P.2d 1092 (1993). A party is not required to concede either factual matters central to the lawsuit or legal conclusions. Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 32 Wash.App. 32, 49, 645 P.2d 1122 (1982); see also Reid Sand & Gravel, Inc. v. Bellevue Props., 7 Wash.App. 701, 704, 502 P.2d 480 (1972) ("It is not a proper use of CR 36 to request an adversary to admit, in effect, the truth of the assertion that he should lose the lawsuit.").
However, CR 36 does permit "statements or opinions of fact or of the application of law to fact." CR 36(a). CR 36(a) also states that a party who believes that a matter for which an admission has been requested relates to "a genuine issue for trial or a central fact in dispute may not, on that ground alone, object to that request; he may, subject to the provisions of rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it." CR 36(a).
The requests at issue here, and their answers, are as follows:
1. The defendant negligently stored its hay in the plaintiff's barn.
RESPONSE: Denied.
2. The defendant's negligent storage of hay was a proximate cause of the fire that burned the plaintiff's barn.
RESPONSE: Defendant denies this request for admission because it does not yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
3. There was no contributory negligence by the plaintiffs which proximately caused or contributed to the start of the fire in their barn.
RESPONSE: Defendant denies this request for admission because it does not yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
4. The defendant's negligence was the sole proximate cause of the fire that burned the plaintiff's barn.
RESPONSE: Denied.
5. There was no contributory negligence or comparative fault by the plaintiffs which proximately caused or contributed to any of their damages as alleged in their Complaint.
RESPONSE: Defendant denies this request for admission because it does not yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
CP at 172-73.
King Feed argues that the trial court abused its discretion in granting sanctions pursuant to CR 37(c) because (1) the requests for admission asked King Feed to *385 admit major factual issues central to the lawsuit, and (2) the requests for admission asked King Feed to concede legal conclusions (i.e., negligence, proximate cause, and absence of contributory negligence).
King Feed's first argument is that Owners' requests for admission asked King Feed to admit factual issues central to the lawsuit. This argument fails because CR 36 clearly states a party may not deny a request on the grounds that the party considers the matter on which the admission has been requested "presents a genuine issue for trial," or "a central fact in dispute." CR 36(a). A party may only deny a request for admission pursuant to the four exceptions of CR 37(c) and must include the specific reasons for such denial. Id.
Furthermore, King Feed had a duty to seasonably supplement its initial responses to the requests for admission. The fact that the requests were propounded within days of the complaint is immaterial. CR 26(e)(2) provides that a party is under a duty to supplement a prior response if he obtains information upon the basis of which "he knows that the response was incorrect when made" or "he knows that the response though correct when made is no longer true." CR 26(e)(2)(A), (B). King Feed either denied each request for admission directly or denied each request based on insufficient information upon which to base an informed decision despite reasonable inquiry, further stating that discovery and investigation were continuing. Although King Feed contested its liability at trial, there is nothing in the record to support its contentions. As the trial judge noted in her ruling, "it doesn't appear that there was a reasonable ground to believe that the cause of the fire was anything other than the storage of wet hay and that the plaintiff was not contributorily negligent." CP at 444. All of the experts concluded the likely cause of the fire was spontaneous combustion of hay. As such, there was sufficient evidence upon which King Feed should have based an informed response to the request for admission.
King Feed's second argument appears to be that the requests for admission asked King Feed to concede legal conclusions including negligence, proximate cause, and absence of contributory negligence. This argument fails because the requests did not ask King Feed to state legal conclusions. What courts refer to as legal conclusions may also be called questions of law. CR 36 does not authorize requests for admission to ask, nor require a party to answer, questions of law. Rather, the requests for admission asked King Feed major factual issues and asked King Feed to apply the law to the facts concerning negligence, proximate cause, and contributory negligence. Nothing in CR 36 entitled King Feed to deny the questions in absence of proof to support such denial.
Therefore I would affirm the trial court's decision to grant sanctions pursuant to CR 37(c). There is no limitation in CR 36 or CR 37 that restricts requests for admission to the admission of major factual issues nor were there any questions which asked King Feed to concede legal conclusions.

3. Should Owners be awarded additional attorney fees and costs incurred on appeal pursuant to CR 37(c) and RAP 14.1-14.4?
Owners request that we award them attorney fees and costs on appeal pursuant to CR 37(c) and RAP 14.1-14.4. We deny this request. Owners have cited no statutory, contractual, or other basis on which to award attorney fees in this action. Therefore we do not award attorney fees and costs on appeal.

CONCLUSION
In summary, we conclude that the trial court's jury instruction on damages was not erroneous or prejudicial and that Owners are not entitled to attorney fees and costs on appeal.
BRIDGE, CHAMBERS and OWENS, JJ., concur.
C. JOHNSON, J. (concurring/dissenting).
I agree with the majority on the proper measure of damages. However, I agree with the dissent that, in this case, the trial court erred in imposing sanctions.
*386 SANDERS, J. (partially dissenting).
Glenn and Janice Thompson leased their barn to King Feed & Nutrition Services, Inc. (King Feed) to store hay cut from surrounding properties. The hay spontaneously combusted and the barn burned to the ground. The Thompsons sued King Feed for negligence and a jury awarded $300,000 in damages. At issue on appeal are (1) the jury instruction on the measure of damages and (2) the trial court order awarding attorney fees to the Thompsons under CR 37(c).

I. Our Precedent Does Not Distinguish between "Damaged" Property and "Destroyed" Property
The trial court instructed the jury to award damages that "reasonably and fairly compensate" the Thompsons for the destruction of their barn if the jury found for them.[1] The instruction included a list of factors for the jury to weigh, including the replacement cost of the barn and its value before the fire. However, the instruction did not direct the manner in which the factors were to be weighed and was therefore contrary to precedent.
The early case of Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769 (1948), considered the proper measure of damage for injury to real property. In Burr the defendants' employee caused the plaintiffs' furnace boiler to explode while attempting to repair their residential heating system. Thereafter the plaintiffs hired a heating contractor who determined the boiler had to be replaced "as it was impossible during the war years to get the parts required for the repair of the old boiler." Id. at 154, 190 P.2d 769. The plaintiffs sued the defendant for negligence seeking to recover the cost of replacing the boiler. The heating contractor testified at trial that "the new boiler was the only one available, of the size necessary for the particular job" and that "the method employed for remedying the situation was the cheapest that could be figured out." Id. at 157-58, 190 P.2d 769. The trial court awarded the plaintiffs damages equal to the cost of purchasing and installing a new boiler.
On appeal we affirmed and set-out the following oft-quoted general rules to measure damage to real property:
In the case of real property, where the injury is only temporary, and the property can be restored to its original condition at a reasonable expense and at a cost less than the diminution in the value of the property, the general rule for the measure of damages is the cost of restoration.
The general rule is well stated in Koyen v. Citizens['] Nat[ional] Bank, 107 Neb. 274, 185 N.W. 413 [1921], as follows:
"Property such as fences, parts of buildings, and machinery, and furnaces, is capable of being replaced, and the proper measure of damages for the destruction thereof is the cost of restoring or replacing such property. If the property destroyed has no value separate and apart from the realty, the measure of damages for property destroyed is the difference between the value of the real estate before the injury and after the injury. But as to the destruction of property which is a part of the real estate, whose destruction does the realty itself no damage and is capable of being repaired or replaced, the measure *387 is the cost of repairing or restoring the same."
Id. at 158, 190 P.2d 769 (citations omitted). Burr stated the general rule that the correct measure of damage is the cost of repair or diminution of value, whichever is less.[2]
Hogland v. Klein, 49 Wash.2d 216, 298 P.2d 1099 (1956), followed this rule, applying it specifically to a destroyed building. In Hogland the plaintiff agreed to move a building for the defendant. The move required the plaintiff to divide the building into two sections. During the course of the move one of the beams supporting the second section of the building broke and that part of the building was destroyed. The trial court determined that prior to the accident, the value of the damaged portion of the building was $1,000 and that immediately after, the value was $100. Finding the cost of repairing the damaged portion of the building "far exceeded" that portion's actual value prior to the accident, the trial court awarded the defendant $900, an amount equal to the difference in value of the damaged portion of the building before and after the accident.
On appeal we quoted favorably the general rule set forth in American Jurisprudence:
"The owner is entitled to recover the entire cost of restoring a damaged building to its former condition unless such cost exceeds its diminution in value as the result of the injury, in which event the recovery must be limited to the amount of such diminution. Under this rule the court should receive evidence both as to the cost of restoring the building and as to the amount of its diminished value, and then adopt as the measure of damages the lesser of the two amounts."
Hogland, 49 Wash.2d at 220, 298 P.2d 1099 (emphasis added) (quoting 15 Am.Jur. § 113, at 524). Applying that rule we affirmed.
Read together, Burr and Hogland establish generally the measure of damage is the cost to repair or restore the building to its former condition or its diminution in value, whichever is less. Hogland, 49 Wash.2d at 220, 298 P.2d 1099; Burr, 30 Wash.2d at 158, 190 P.2d 769. This is especially true where, as was the case in Hogland, the building at issue is destroyed and is uneconomical to repair. See Hogland, 49 Wash.2d at 218, 298 P.2d 1099.
Subsequent cases have also applied this formula with little difficulty. In Falcone v. Perry, 68 Wash.2d 909, 416 P.2d 690 (1966), the defendant's employee negligently allowed a truck to roll down the street into the plaintiff's house, causing extensive damage. 68 Wash.2d at 910, 416 P.2d 690. Testimony presented at trial established the house was *388 worth between $4,000 and $6,000 and could be repaired for about $4,400. The value of the real property before the accident was roughly $28,000 and the value after was about $27,600. At trial both parties agreed "the proper measure of damages [was] the cost of repairs to the building, or the diminution in value of the plaintiff's property, whichever [was] the lesser." Id. at 911-12, 416 P.2d 690. The jury rendered a verdict of $4,095 after being instructed, among other things, that it "`must adopt as the measure of damages the lesser of the two amounts, the cost of repair or the diminution in value.'" Id. at 912, 416 P.2d 690. On appeal we affirmed the jury's award, citing favorably both Burr and Hogland.
In Pepper v. J.J. Welcome Construction Co., 73 Wash.App. 523, 871 P.2d 601 (1994), excessive runoff damaged the Peppers' land. They sued the developer who was clearing and grading the neighboring land for damages. The trial court applied the "lesser than" rule, but the Court of Appeals disagreed since the damage was to the land itself, not to any structure. However, it noted that "Washington courts have consistently applied the `lesser-than' rule in fixture cases where the damaged real property is affixed to land." Pepper, 73 Wash.App. at 541, 871 P.2d 601. The Pepper court correctly distinguished, as had the Burr court years earlier, between harm to the land itself and harm to improvements on the land. The "lesser than" rule applies in the latter context.
Despite the clarity of our precedent, the lead opinion makes a logic-defying leap after analyzing these cases. The lead opinion confines the "lesser than" rule to cases where the building is "damaged." Lead opinion at 382. But if the building is "destroyed" a different rule applies. Nowhere do our cases articulate this distinction, probably because it is illogical and nearly impossible to apply.[3] Just how much damage must a building sustain before it is "destroyed" rather than merely "damaged"? If a defendant negligently cuts down a tree, causing it to fall on the neighbors garage and cave in one side of the building, is it damaged or destroyed? If the defendant negligently sets fire to a building that is severely charred but still standing with some structural integrity, is it damaged or destroyed? The court's job is reduced to defining where on that elusive continuum one crosses the magical line from "damaged" to "destroyed" with a concomitant change in the measure of damages. Such a distortion is unworkable and will result in future litigants straining to compare their facts to cases in which the measure of damages yielded the most favorable award.
The lead opinion also ignores the facts of Hogland, in which the building half being moved was "practically demolished." 49 Wash.2d at 218, 298 P.2d 1099. Hogland made no effort to distinguish between "damaged" and "destroyed," but instead simply applied the "lesser than" rule. Burr did the same in the context of a boiler that was completely destroyed and evidence suggested replacement was the cheapest alternative. The lead opinions newly minted distinction is without precedent.
After distorting our case law to avoid its conclusions, the lead opinion does not tell us what the rule is in the context of a "destroyed" building beyond a statement that the general purpose of damages for "injury to real property is to return the injured party as nearly as possible to the position he would have been in had the wrongful act not occurred." Lead opinion at 383 (quoting 16 DAVID K. DEWOLF KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE 5.2, at 126 (2d ed.2000)). While useful as a purpose statement, this broad language is no substitute for specific rules carefully formulated and applied over many years.[4]
*389 Jury instruction 8 is wrong because it misstates the law applicable to the present facts. Here, as in Hogland, the injury at issue is the negligent destruction of a building. At trial, evidence was presented that the cost of replacing the barn was roughly $500,000, and the fair market value of the barn before the fire was between $100,000 and $320,000. The evidence thus established that the barn, like the building in Hogland, had value separate and apart from the real property. Thus, the proper measure of damages under these circumstances is the lesser of the cost to replace the barn or the diminution in value of the property as a result of the fire. See Hogland, 49 Wash.2d at 220, 298 P.2d 1099. This is precisely the measure of damages proposed instruction D-6 would have instructed the jury to award.[5] Because jury instruction 8 did not include the diminution in value limitation on damages established in Hogland, it was erroneous.
The instruction was prejudicial to King Feed. The Thompsons' appraiser presented evidence at trial that immediately before the fire their barn was worth between $290,000 and $320,000 and therefore the barn "contributed a value of $300,000, more or less, to the Thompson property." Verbatim Report of Proceedings at 285. However, King Feeds expert countered by testifying the barn added approximately $100,000 to $110,000 to the value of the Thompsons' property. In light of the conflicting value estimates we cannot say jury instruction 8 was harmless because we cannot be sure what the jury would have done had it been properly instructed. Thus, King Feed was prejudiced by jury instruction 8. An error related to a jury instruction will be "reversible error where it prejudices a party." Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). The case must be reversed and remanded for a new trial.

II. The Trial Court Abused Its Discretion by Awarding Attorney Fees to Thompson under CR 37(c)
The trial court sanctioned King Feed and awarded attorney fees to the Thompsons under CR 37(c). We reverse the Court of Appeals and vacate the order imposing sanctions on King Feed because the admission requests asked King Feed to admit legal conclusions, which is an improper use of CR 36.[6]
*390 We review a trial court's decision to impose discovery sanctions under CR 37(c) for an abuse of discretion. Rivers v. Washington State Conference of Mason Contractors, 145 Wash.2d 674, 684, 41 P.3d 1175 (2002); see also Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338-39, 858 P.2d 1054 (1993) (appellate court reviews decision to impose discovery sanctions for an abuse of discretion). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Fisons, 122 Wash.2d at 339, 858 P.2d 1054.
CR 37(c) provides that if a party fails to admit the truth of a matter requested in a CR 36 request for admission, and the truth of that matter is subsequently proved, upon request, the trial court shall award reasonable expenses and attorney fees incurred in making that proof, unless:
(1) the request was held objectionable pursuant to rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe the fact was not true or the document was not genuine, or (4) there was other good reason for the failure to admit.
CR 37(c).
The purpose of CR 36 requests for admission is to eliminate from controversy factual matters that will not be disputed at trial. Santos v. Dean, 96 Wash.App. 849, 861, 982 P.2d 632 (1999); Brust v. Newton, 70 Wash.App. 286, 295, 852 P.2d 1092 (1993); Reid Sand & Gravel, Inc. v. Bellevue Props., 7 Wash.App. 701, 704, 502 P.2d 480 (1972). To that extent, a party is not required to concede either factual matters central to the lawsuit or legal conclusions. Brust, 70 Wash.App. at 295, 852 P.2d 1092; Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 32 Wash.App. 32, 49, 645 P.2d 1122 (1982); Reid, 7 Wash.App. at 704, 502 P.2d 480 ("It is not a proper use of CR 36 to request an adversary to admit, in effect, the truth of the assertion that he should lose the lawsuit."). But CR 36 permits requests for the admission of, among other things, "statements or opinions of fact or the application of law to fact." CR 36(a). Furthermore, a party who believes a request for admission relates to "a genuine issue for trial or a central fact in dispute may not, on that ground alone, object to the request; he may, subject to the provisions of rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it." Id.
The requests for admission at issue here, and King Feed's answers, are as follows:

REQUESTS FOR ADMISSION
1. The defendant negligently stored its hay in the plaintiffs' barn.
RESPONSE: Denied.
2. The defendant's negligent storage of hay was a proximate cause of the fire that burned the plaintiffs' barn.
RESPONSE: Defendant denies this request for admission because it does not yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
3. There was no contributory negligence by the plaintiffs which proximately caused or contributed to the start of the fire in their barn.
RESPONSE: Defendant denies this request for admission because it does not yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
4. The defendant's negligence was the sole proximate cause of the fire that burned the plaintiffs' barn.
RESPONSE: Denied.
5. There was no contributory negligence or comparative fault by the plaintiffs which proximately caused or contributed to any of their damages as alleged in their Complaint.
RESPONSE: Defendant denies this request for admission because it does not *391 yet have sufficient information upon which to base an informed decision despite reasonable inquiry. Discovery and investigation are continuing.
CP at 172-73, 126-27.
Although each of the requests for admission might possibly be characterized as relating to "the application of law to fact," CR 36(a), they undoubtedly requested King Feed to admit legal conclusions. Together, requests for admission 1, 2, and 4 asked King Feed to admit that it "negligently" stored hay in the Thompsons' barn and that such "negligence" was the "proximate cause" of the fire. Negligence and proximate cause are legal conclusions and are matters usually reserved for the jury. Similarly, requests 3 and 5 asked King Feed to admit there was no "contributory negligence" on the part of the Thompsons for the fire. Contributory negligence, like negligence, is a legal conclusion usually reserved for the jury. Although the requests for admission were phrased arguably to characterize them as relating to the application of law to fact under CR 36(a), King Feed's negligence and liability for the fire are legal conclusions. To that extent, King Feed likely had "other good reason for the failure to admit" the Thompsons' requests for admission. CR 37(c)(4). Thus, the trial court's award of attorney fees and expenses against King Feed abused its discretion. We therefore reverse the Court of Appeals and vacate the order imposing sanctions on King Feed.

III. Conclusion
The lead opinion creates a new and unworkable rule for measuring damages for injury to real property. Its distinction between "damaged" and "destroyed" buildings is misguided and wholly unnecessary. The new rule is confusing and will work considerable mischief in future cases. The Court of Appeals should be reversed and the case should be remanded for a new trial.
While the lead opinion would affirm the sanctions under CR 37(c), we disagree because the Thompsons asked King Feed to admit legal conclusions. Therefore, on this issue the Court of Appeals is reversed and the order imposing sanctions is vacated.
ALEXANDER, C.J., Madsen and Fairhurst, JJ., concur.
NOTES
[*] Justice Faith Ireland is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).
[1] Instruction D6 provides in relevant part:

If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.
If you find for the plaintiff your verdict should be the lesser of the following:
1. The reasonable value of necessary replacement of the barn which was destroyed; or
2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash market value of the unrepaired property immediately after the occurrence.
CP at 82.
[1] Jury instruction 8 reads in relevant part:

If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.
If you find for the plaintiff, you should consider the following factors:
1. The value the barn added to the plaintiffs' property immediately before the fire;
2. The fair market value of the barn;
3. The fair rental value of the barn;
4. The reasonable cost to replace the barn if you find:
a. that there is reason personal to the owner for replacing the barn or
b. where there is reason to believe that the plaintiff will replace the barn to its original condition,
and you find that the cost of replacing the barn, although it may be greater than the value added to the property by the barn, is not unreasonably disproportionate to the diminution in market value of the property because of the loss of the barn.
Clerk's Papers at 99.
[2] Burr distinguished between injuries to land and to the improvements on the land. If the harm is to the land itself the next step is to apply the temporary/permanent rule with its associated measures of damages. Harkoff v. Whatcom County, 40 Wash.2d 147, 241 P.2d 932 (1952), articulated this standard in the context of a suit for harm to real property from the flooding of the county's roadside drainage ditch. We stated this rule:

In determining what is the applicable rule for measuring damages in cases like the one before us, one of the first questions is whether the damage to the property is permanent, or whether the property may be restored to its original condition. If the injury is permanent, the general rule applicable is the difference between the market value of the property immediately before the damage and its market value immediately thereafter. If, however, the property may be restored to its original condition the measure of damages is the reasonable expense of such restoration, and in a proper case the loss of use or of income therefrom for a reasonable time pending such restoration.
Id. at 152, 241 P.2d 932. The court noted that choosing between these two rules is sometimes difficult: "A study of the foregoing questions will indicate that sometimes it has been difficult to determine which rule to apply to a given situation. In some situations, the cost of repairing the injury may be greater than the diminution in its market value, in which event the courts are inclined to use the latter measure of damages." Id. at 153, 241 P.2d 932.
This temporary/permanent distinction is amply illustrated by case law and treatises. See, e.g., Colella v. King County, 72 Wash.2d 386, 433 P.2d 154 (1967); 16 DAVID K. DEWOLF KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE 5.2, at 126-28 (2d ed.2000). Stated simply, the rule is that if the injury to the real estate (land) is temporary or capable of repair, then the measure of damages is the reasonable cost of repair. But if the injury is permanent or beyond repair, then the measure of damages is the diminution in value of the property. It must be emphasized that the temporary/permanent distinction does not apply to harm to improvements. Compare 22 AM.JUR.2D DAMAGES §§ 255-57 (2003) with id. §§ 269, 273.
[3] See supra note 3 for a discussion of the temporary/permanent distinction for harm to the real estate itself. There is no similar distinction for harm to structures.
[4] The lead opinion also quotes the same treatise for the proposition that the trier of fact may choose the measure of damages. Lead opinion at 383 (quoting 16 DEWOLF ALLEN, supra, § 5.2, at 126). The authors of the treatise obtained this rule from Tatum v. R & R Cable, Inc., 30 Wash.App. 580, 636 P.2d 508 (1981), overruled on other grounds by Beckmann v. Spokane Transit Authority, 107 Wash.2d 785, 733 P.2d 960 (1987), in which the court stated in a footnote: "The trial court believed restoration damages were the proper method; that is within the province of the trier of fact." Tatum, 30 Wash.App. at 584 n. 2, 636 P.2d 508. This proposition is true only so far as it does not contradict the general rule for damages articulated by our precedent. The cases cited earlier do not grant the trier of fact the discretion to choose the measure of damages. See, e.g., Pepper, 73 Wash.App. at 541, 871 P.2d 601 (holding that the trial court erred by using the wrong rule for measuring damages). The trier of fact determines the amount of damages using the various measures, and then may award replacement damages unless they exceed diminution in value damages, in which case it must award the latter.
[5] Jury instruction D-6 reads as follows:

If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.
If you find for the plaintiff your verdict should be the lesser of the following:
1. The reasonable value of necessary replacement of the barn which was destroyed; or
2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash market value of the unrepaired property immediately after the occurrence.
Clerk's Papers (CP) at 82.
The lead opinion rejects this instruction partially because it is based on Washington Pattern Jury Instruction 30.11, see lead opinion at 383, which states:
MEASURE OF DAMAGES  DAMAGE TO PERSONAL PROPERTY  REPAIRS OR DIFFERENCE IN VALUE BEFORE AND AFTER DAMAGE
The lesser of the following:
1. The reasonable value of necessary repairs to any property that was damaged; or
2. The difference between the fair cash market value of the property immediately before the occurrence and the fair cash market value of the unrepaired property immediately after the occurrence.
6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 30.11, at 301 (4th ed.2002). It is irrelevant whether instruction D-6 was based on WPI 30.11; it correctly represents our precedent, and that is enough. State v. Teal, 152 Wash.2d 333, 339, 96 P.3d 974 (2004) (affirming that "jury instructions are sufficient when, read as a whole, they accurately state the law").
[6] King Feed also contends it had reasonable grounds not to admit negligence, proximate cause, or that the Thompsons were not contributorily negligent because those were major factual issues central to the lawsuit. If correct this argument would also provide a basis to vacate the sanctions. However, we do not reach this claim because we reverse the Court of Appeals on the grounds that the discovery requests asked King Feed to admit legal conclusions.