# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| K.H., as guardian for her minor daughter D.H.; K.H. and G.H. individually,<br><br>            Appellant,<br><br>    v.<br><br>OLYMPIA SCHOOL DISTRICT, a public corporation<br><br>            Respondent. | No.  48583-4-II<br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, J. — DH and her parents (collectively the "Appellants") sued Olympia School District for negligence after district employee Gary Shafer admitted to molesting DH, a district student, and a jury returned a verdict that the District was liable but that the value of the Appellants' damages was "$0." On appeal, the Appellants argue that the trial court erred when it denied the Appellants' motion for a new trial, gave one of the jury instructions, and denied the Appellants' motion for summary judgment on liability, the Appellants' motion in limine to admit prior admissions on liability, and the Appellants' motion for attorney fees under CR 37(c). Finding no prejudicial error, we affirm.

FACTS

I. BACKGROUND

In January 2011, police arrested district school bus driver Shafer for molesting three district students—NL, VV, and TC—and for possessing child pornography. In August, Shafer pleaded guilty as charged and was sentenced to 175 months in prison. In June 2014, the Appellants, parents of DH, a fourth district student whom Shafer had also molested, sued the District for gross negligence, negligence, and negligent infliction of emotional distress based upon the District's failure to prevent Shafer from abusing DH.

II. SUMMARY JUDGMENT AND EVIDENTIARY MOTION

In September 2015, the Appellants moved for summary judgment on the issue of the District's liability on the ground that collateral estoppel applied. The trial court denied the summary judgment motion, ruling that collateral estoppel did not apply.

In October, the Appellants moved to have the trial court admit the complaint and the District's admissions of negligence and gross negligence in *Crunkleton v. Olympia School District*[1] as substantive evidence under ER 801(d)(2).[2] In response, the District argued that the *Crunkleton*

---

[1] Following Shafer's convictions, NL, VV, TC, and their families or guardians brought three civil lawsuits against the District—*Gutierrez v. Olympia School District*, noted at 184 Wn. App. 1059, 2014 WL 6984636, *review denied*, 183 Wn.2d 1004 (2015), *Villarreal v. Olympia School District*, No. 11-2-01970-2, Thurston County Super. Ct., and *Crunkleton v. Olympia School District*, No. 12-2-02039-3, Thurston County Super. Ct. The *Gutierrez* plaintiffs prevailed at trial and were awarded $1.4 million in damages. The *Villarreal* plaintiffs obtained summary judgment against the District on the issue of breach of duty. And in *Crunkleton*, the District admitted liability, although it contested the amount of damages. Whether damages were awarded in the latter two cases is not in the record before us.

[2] ER 801(d)(2) excludes from the definition of hearsay a party opponent's admissions when the admissions are offered against the party opponent.

documents were not admissions under ER 801(d)(2) and, alternatively, that the *Crunkleton* documents were inadmissible under ER 403. The trial court denied the Appellants' motion and their subsequent motion for reconsideration.

### III. OTHER PRETRIAL PROCEEDINGS

Trial was set for November 30. In the months preceding trial, the District represented that it would contest liability at trial. The parties disputed the division of trial time, with the Appellants requesting either that trial be allowed to proceed until both parties had fully presented their cases or a 60/40 allocation with the possibility of extending trial.

On November 24, the parties appeared for a pretrial hearing, and both the Appellants and the District informed the trial court that they were prepared for trial on November 30. The Appellants told the trial court that when they had agreed that eight days was appropriate, they had "always assumed that the District would . . . admit[] liability or that it would be otherwise established." Report of Proceedings (RP) (Nov. 24, 2015) at 9. In response, the trial court stated that "I understand the [Appellants] made some assumptions about admissions by the [District], but it's pretty late, and there's been no motions to the Court to ask for extra time other than a very recent motion to either divide the trial time in a particular way or give you extra days, and it's not possible at this stage." RP (Nov. 24, 2015) at 10. The District subsequently sought a continuance of the trial date, which the Appellants "vehemently oppose[d]" and the trial court denied. Clerk's Papers (CP) at 6864.[3]

---

[3] The Appellants' witness list included multiple damages experts. In the first week of trial, the Appellants moved for two additional days of trial time to present their case, including three of the damages experts' testimony. The trial court granted the Appellants only an additional half day because in its view, the Appellants had run out of time because they "made some assumptions that the case would shrink before it started and that eight days would be sufficient." 6 RP at 1177.

IV. TRIAL

A. APPELLANTS' LIABILITY TESTIMONY

Shafer testified that he was a district employee who had joined the District as a bus driver in 2005. Shafer explained that at least once a week, in order to groom children, he rode along on buses driven by other district drivers. Beginning in the fall or early winter of 2010, Shafer molested DH three times. DH suffers from a congenital condition known as Trisomy X.[4] Shafer assumed that due to her condition, DH would be "less likely . . . to tell on" Shafer. 2 RP at 325. The first two times, Shafer molested DH while Shafer rode along on DH's bus. The third time, Shafer drove DH's bus, and he pulled the bus over in order to molest DH.

District employees described a failure to train bus drivers to recognize the signs of grooming and sexual molestation and a lack of procedures documenting when other bus drivers would ride along on a bus. The district superintendent admitted that after a driver had been fired in 2009 for misconduct, Shafer's supervisors should have been "on the lookout." 4 RP at 644. Documenting ride-alongs would have helped district employees to recognize when there was an unusual pattern or behavior by a bus driver. And the Appellants' expert witness testified that the District did not meet the standard of care in Washington when it hired Shafer.

---

According to the trial court, the "[Appellants] had information well before trial that the case had not been narrowed in terms of the issues and nonetheless did not seek a continuance, knowing that the case had been confirmed for eight trial days." 6 RP at 1177.

[4] DH's mother testified that DH's Trisomy X caused her to have delayed speech, language, and motor skills, to have a slightly lowered IQ, and to be shy.

## B. DAMAGES TESTIMONY

### 1. APPELLANTS' TESTIMONY

DH's mother explained that in November or December 2010, four-year-old DH, who rode a special needs bus, had been dropped off by a school bus driven by two men. DH was not smiling, which her mother noted was "different," and right away, DH asked her mother, "'Why that man touch my bottom?'" 7 RP at 1231. DH was "really upset," "moody," and "off" that afternoon—so much so that DH's father returned home early from work because he was concerned—although DH's behavior eventually returned to normal and her parents attributed her behavior that afternoon to a "misunderstanding." 7 RP at 1232.

DH's mother called DH's preschool teacher, Simona McEwen, who testified that DH's statement about a man touching her had "stood out to" McEwen at the time. 9 RP at 1721. In McEwen's view, it was remarkable for DH to utter such a long sentence because DH typically spoke in "pretty short sentences." 9 RP at 1721. DH refused to ride the bus after the incident. After DH began kindergarten, approximately three years after the molestations, her toilet training regressed, and at home, she had tantrums and was destructive and abusive to the family pets. DH began to act out sexually between second and third grade to the point that DH's parents felt that she was "out of control." 7 RP at 1268.

According to DH's mother, DH's behavior was "stressful," caused DH's parents to have marital problems, and led DH's mother to worry that DH's sexual behavior would cause her future problems. 7 RP at 1275. It was not until May 2011, when police informed DH's mother that Shafer had admitted to molesting a child on DH's bus, that DH's mother learned that Shafer had potentially molested DH. DH's mother testified that she believed that DH was the child that Shafer

5

had molested and that the news emotionally upset her, so that she "felt like [her] whole world was coming down." 7 RP at 1237. She felt "[l]ike [she had] not been a good mom . . . [b]ecause this happened to [DH]" and because she "didn't follow up." 7 RP at 1274-75. DH's mother explained that she had preexisting depression.

Jon Conte, the Appellants' "sex abuse trauma expert," also briefly testified regarding DH's mother's damages. 1 RP at 66. Conte opined that DH's mother suffered as a result of DH's abuse—in particular, she worried and felt "guilty" and she could not "stop thinking about" and imagining "what must have happened on the bus." 6 RP at 1031. The abuse had caused DH's mother to experience depression and anxiety.

Conte did not testify regarding the effect of Shafer's abuse of DH on DH's father. DH's father testified about his fears that "all of this" would continue to affect DH because DH would be unable to complete high school and college and would become pregnant in high school and involved in "other things," such as prostitution. 7 RP at 1360. These fears were "very disturbing" to DH's father. 7 RP at 1360.

2.    DISTRICT TESTIMONY

Dr. Russell Vandenbelt, a psychiatrist, testified regarding which of DH's symptoms were attributable to her Trisomy X and which could be attributed to the molestations. He explained that Trisomy X resulted in developmental delays, particularly in speech and language acquisition and motor skills, below average intelligence, and difficulty in social situations resulting in anger, tantrums, and anxiety. Dr. Vandenbelt acknowledged that DH had been "transiently upset[]" (8 RP at 1546) on the afternoon of the bus incident but opined that

> [t]he best available information in the records is that [DH] really wasn't any
> different in the immediate time frame following what happened on the bus outside

6

of the afternoon when supposedly something happened and carrying forward. So the picture that emerges is one of someone who is pretty much the same after the time of whatever happened on the bus as she was before.

8 RP at 1531. DH immediately reported the bus incident, and thus Dr. Vandenbelt explained that DH had not repressed the incident, which he characterized as "at the lower end of the severity continuum with regard to what can happen . . . in childhood sexual abuse." 8 RP at 1544.

According to Dr. Vandenbelt, DH's shyness, sensitivity to wearing clothing, aggression, temper tantrums, anger, immaturity, social and emotional issues, and speech delays all preexisted the molestations and were attributable to DH's Trisomy X, not to the molestations. Dr. Vandenbelt explained that DH's abuse of the family pets and difficulties at home were "attributable to her developmental issues related to the Trisomy X" and were "repeated examples of her having difficulty managing . . . different frustrations." 8 RP at 1561. Similarly, DH's incontinence issues were unrelated to "past incidences of sexual abuse" because her incontinence correlated with changes in DH's schedule and was not a "pervasive pattern." 8 RP at 1564-65. And DH's sexual acting out was "not related" to the molestations because the sexualized behaviors occurred in isolation, rather than being part of the aftermath of an earlier event that carried forward. 8 RP at 1571. The "[p]robability" was that DH would not "have any future problems" related to the molestation, which DH did not seem to remember.[5] 8 RP at 1545.

The District also called DH's mother, who admitted that DH had not had concerning "toileting issues" until kindergarten, which had later resolved, and that DH's mother had told a doctor in 2013 that she noticed no regression or loss of skills in DH. 8 RP at 1447. In June 2011,

---

[5] On cross-examination, the Appellants' expert Conte similarly testified that DH had no independent memory of the molestations on the bus.

after DH's mother had learned of the abuse, DH's mother stated at a doctor's appointment that she felt that DH did not have any significant issues related to the bus incident.[6] DH's mother had also admitted in December 2012 that she had seen nothing in DH's behavior that caused her to believe that there had been significant contact. It was not until a therapist's appointment in 2015 that DH's mother stated that DH had been acting out sexually. However, DH's mother did note that DH's behavior had become "increasingly more difficult . . . to handle" since 2011. 8 RP at 1498. DH's mother also stated, "[A] lot of what I have seen and simply shrugged off as just problematic and something that was part of [DH], I can see [was] most likely due to an evolving problem with her having been sexually molested." 8 RP at 1498.

McEwen testified that when DH was McEwen's student, DH never acted aggressively and exhibited no unusual or concerning behaviors. McEwen noted "[n]o change" in DH's behavior following the bus incident and that DH continued to make "steady progress." 9 RP at 1721-22. Similarly, DH's kindergarten and first-grade teachers reported that DH appeared reserved yet friendly and happy and did not have any angry outbursts or aggressive or sexualized behaviors.

Dr. Vandenbelt had also evaluated DH's mother. He acknowledged that DH's mother suffered guilt, anger, anxiety, and depression; DH's mother was stressed by her own understanding of what had happened on the bus. Dr. Vandenbelt acknowledged that DH's mother had preexisting depression, and he testified that the depression was "affected by [DH's mother's] understanding

---

[6] Dr. Vandenbelt had also testified that he reviewed records of a doctor's visit in July 2012, where no symptoms attributable to any events that occurred in the fall of 2010 were discussed. Having interviewed DH's mother, Dr. Vandenbelt believed that DH's mother was someone who would be particularly likely to notice if DH had symptoms resulting from the abuse.

of her daughter having been sexually abused. [However, t]hat's a different thing than saying . . . that her . . . depression over time has been made worse." 9 RP at 1632-33.

C. JURY INSTRUCTIONS AND VERDICT

At a jury instructions conference, the trial court explained that it would include as instruction 19 an instruction proposed by the District and used in *Rollins v. King County Metro Transit*, a case that the trial court believed had "significant parallels to this case." 10 RP at 1930 (citing 148 Wn. App. 370, 199 P.3d 499 (2009)). Instruction 19 stated,

> In calculating a damage award, you must not include any damages that were caused by acts of Gary Shafer and not proximately caused by negligence of the [District]. Any damages caused solely by Gary Shafer and not proximately caused by negligence of the [District] must be segregated from and not made a part of any damage award against [the District].

CP at 6433. The Appellants objected to instruction 19 and argued that the instruction "unfairly and prejudicially" "frame[d] the issue in the negative and has the jury excluding damages immediately as opposed to describing in a positive fashion what they are to award" and misstated the law. CP at 6155; 11 RP at 2065-66. The trial court also gave instruction 5, proposed by the Appellants, which stated that "[a]ny act or omission of an officer or employee is the act or omission of the" District. CP at 6419.

During deliberation, the jury asked whether under instruction 5, Shafer should be considered an employee of the District for purposes of determining negligence. The District argued that the jury had "found a flaw" in the instructions and speculated that the jury wondered whether Shafer's intentional acts could be imputed to the District. 11 RP at 2189. The Appellants disagreed, argued that there were a "myriad of reasons" that the jury could have asked the question, and proposed that the jury be told to read its instructions. 11 RP at 2198. After consulting with

both attorneys, the trial court agreed with the Appellants, rejected the District's request for an additional instruction, and directed the jury to reread the instructions. The trial court reasoned that it was unclear from the question whether the jury thought "that there is vicarious liability here" and accepted the Appellants' argument that "the instructions together guide the jury to the overall instructions and legal principles that apply." 12 RP at 2217.

On December 17, the jury returned a special verdict form in which it answered, "Yes" to the questions of whether the District was negligent or grossly negligent and whether such negligence or gross negligence was "a proximate cause of injury or damage to the [Appellants]." CP at 6447-48. However, the jury found the measure of each of the Appellants' damages "proximately caused by" the District to be "$0" in response to three separate interrogatories. CP at 6449. After the jury returned its verdict and was polled, neither party raised any issues to address, and the trial court recessed.

## V. MOTION FOR A NEW TRIAL

In January 2016, the Appellants moved for a new trial on the issue of damages alone under CR 59(a)(1), (5), (7), and (9).[7] The Appellants argued that the verdict was inherently contradictory because the jury had found that the District's negligence proximately caused the Appellants' damages, yet failed to award the Appellants any damages. The Appellants further argued that because the evidence of their damages was undisputed, the jury's damage award of "$0" was not

---

[7] CR 59 provides that a trial court may vacate a verdict and grant a new trial on the basis of "[i]rregularity in the proceedings of the court, jury or adverse party . . . by which such party was prevented from having a fair trial," "[d]amages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice," "[t]hat there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law," or "[t]hat substantial justice has not been done." CR 59(a)(1), (5), (7), (9).

supported by the evidence.  In response, the District argued that the Appellants waived the issue of whether the verdict was internally inconsistent because they failed to raise it while the jury was impaneled.  The District also argued that the verdict was consistent.

The trial court denied the Appellants' motion for a new trial.  The trial court disagreed that the Appellants had waived the argument.  Further, the trial court determined that the jury's verdict was internally consistent on the basis that either the jury believed that there were no damages caused solely by the District and not also by Shafer or that the jury determined there was no proof of monetary value of any injury caused by the District.

## VI. ATTORNEY FEES REQUEST

After trial, the Appellants moved for fees and costs and argued that fees were appropriate under CR 37(c)[8] because the Appellants' requests for admissions[9] had sought the District's "opinion with regard to the application of law to fact."  CP at 6703.  The District responded that it had properly refused to "admit negligence" and that the requests were improper because they required the District to admit a legal conclusion.  CP at 7431.  The District also noted that it was

---

[8] CR 36 governs requests for admission; CR 37(c) provides that "[i]f a party fails to admit . . . the truth of any matter as requested under [CR] 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter, the party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making that proof, including reasonable attorney fees.  The court shall make the order unless it finds that (1) the request was held objectionable pursuant to [CR] 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe the fact was not true . . ., or (4) there was other good reason for the failure to admit."

[9] In September 2015, the Appellants had requested that the District admit that it "failed to act reasonably in protecting D.H. from [Shafer's] sexual abuse" and that it "breached its duty of care in failing to protect D.H. from [Shafer's] sexual abuse."  CP at 4561-62.  The District refused these requests and explained that each request did "not refer to a factual issue but involve[d] a question of law."  CP at 4561-62.

not required to admit factual matters central to the lawsuit. The trial court denied the Appellants' fee request.

## ANALYSIS

### I. MOTION FOR A NEW TRIAL

#### A. NO WAIVER

The District argues that the Appellants waived their arguments that the verdict was irreconcilable because the Appellants failed to object while the jury was still impaneled. We disagree.

The existence of a waiver is a mixed question of fact and law that, where the facts are undisputed, we review de novo. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 440-41, 191 P.3d 879 (2008). We have noted inconsistency in cases deciding whether a party waived its challenge to a jury verdict when it did not raise the alleged inconsistency prior to the jury's discharge. *Mears v. Bethel Sch. Dist. No. 403*, 182 Wn. App. 919, 928, 332 P.3d 1077 (2014), *review denied*, 182 Wn.2d 1021 (2015). In *Mears*, we stated that *Gjerde v. Fritzsche*, a Division One case declining to consider a challenge to jury interrogatories, appeared to be limited to the circumstances presented: counsel who was silent in the face of actual knowledge of an inconsistency when it could be cured and remained silent in order to "'try his luck with a second jury.'" 182 Wn. App. at 929 n.2 (quoting 55 Wn. App. 387, 394, 777 P.2d 1072 (1989)).

Here, after the jury returned the special verdict and was polled, the Appellants did not object to the verdict. The Appellants first argued that the verdict was irreconcilable in their new trial motion. When the District subsequently argued that the Appellants had waived their objection, the trial court correctly determined that there is no absolute standard that a party waives

its claim of an irreconcilable verdict when it fails to raise the issue before the jury's discharge. *See Mears*, 182 Wn. App. at 928.

On appeal, the District claims that here, there was actual knowledge of an inconsistency and that this is a situation where counsel remained silent despite actual knowledge in order to try his luck with a second jury. *See Mears*, 182 Wn. App. at 929 n.2 (quoting *Gjerde*, 55 Wn. App. at 394). The District points to the jury's question during deliberations: "'In regards to Instruction 5, should [Shafer] be considered an employee of the [District] in determining negligence?'" 11 RP at 2187. But in response to this question, the Appellants contended that it was unclear why the jury asked about negligence and argued against the District's speculation that the jury had found a flaw in the instructions. Thus, it is not clear that the Appellants remained silent despite actual knowledge of an inconsistency, and the rule from *Gjerde* does not apply. *See Mears*, 182 Wn. App. at 929 n.2. We hold that the Appellants did not waive their irreconcilable verdict argument.

## B. VERDICT IS RECONCILABLE

The Appellants argue that the jury's verdict was irreconcilable so that the matter must be reversed and remanded for a new trial on damages. We disagree.

### 1. LEGAL PRINCIPLES

We generally review the denial of a motion for new trial for an abuse of discretion; however, where the trial court based its decision upon an issue of law, we review the issue de novo. *Mears*, 182 Wn. App. at 926-27. Where the jury's answers to a special verdict cannot be reconciled, "'[n]either a trial court nor an appellate court may substitute its judgment for that which is within the province of the jury'" and "'[t]he only proper recourse is to remand the cause for a new trial.'" *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 131, 875 P.2d 621 (1994)

No. 48583-4-II

(alterations in original) (quoting *Blue Chelan, Inc. v. Dep't of Labor & Indus.*, 101 Wn.2d 512, 515, 681 P.2d 233 (1984)). We have stated that "[i]n reviewing a verdict, an appellate court must try to reconcile the answers to special interrogatories." *Alvarez v. Keyes*, 76 Wn. App. 741, 743, 887 P.2d 496 (1995). And in reviewing the verdict, we read the verdict "as a whole, including instructions." *Espinoza v. Am. Commerce Ins. Co.*, 184 Wn. App. 176, 197, 336 P.3d 115 (2014).

2.  JURY INSTRUCTIONS

As relevant to this appeal, the trial court provided the following instructions to the jury:

**INSTRUCTION NO. 5**

. . . Any act or omission of an officer or employee [of the District] is the act or omission of the [District].

**INSTRUCTION NO. 6**

The [Appellants] claim that [the District] was grossly negligent and/or negligent in one or more of the following respects:

1.  Failing to provide reasonable protection for D.H.;
2.  Failing to use reasonable care in the hiring, retention and supervision of the activities of . . . Gary Shafer;
3.  Failing to enforce rules designed to protect passengers from inappropriate touching; and
4.  Failing to train employees;

[The Appellants] claim that this negligence caused injuries and damages to the [Appellants].

CP at 6419-20.

**INSTRUCTION NO. 19**

In calculating a damage award, you must not include any damages that were caused by acts of Gary Shafer and not proximately caused by negligence of the [District]. Any damages caused solely by Gary Shafer and not proximately caused by negligence of the [District] must be segregated from and not made a part of any damage award against [the District].

CP at 6433.

14

**INSTRUCTION NO. 22**

The cause of an injury or event is a proximate cause if it is related to the injury or event in two ways: (1) the cause produced the injury or event in a direct sequence, and (2) the injury or event would not have happened in the absence of the cause.

There may be more than one proximate cause of the same injury or event. If you find that the [District] was negligent and that such negligence was a proximate cause of injury or damage to the [Appellants], it is not a defense that the act of some other person who is not a party to this lawsuit may also have been a proximate cause.

However, if you find that the sole proximate cause of injury or damage to the [Appellants] was the act of some other person who is not a party to this lawsuit then your verdict should be for the [District].

CP at 6436.

**INSTRUCTION NO. 28**

. . . .

If your verdict is for the [Appellants], then you must determine the amount of money which will reasonably and fairly compensate the [Appellants] for such damages as you find were proximately caused by the [District].

[The instructions then listed the elements of noneconomic damages for DH and factors to be considered if the jury awarded DH's parents damages.]

The burden of proving damages rests with the [Appellants] and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.

Your award must be based upon the evidence and not upon speculation, guess or conjecture.

The law has not furnished us with any fixed standard by which to measure pain, suffering, or disability. With reference to these matters, you must be governed by your own judgment, by the evidence in the case, and by these instructions.

CP at 6442-43.

3.    ANALYSIS

Here, the jury returned a verdict that the District had been both negligent and grossly negligent, that the negligence and gross negligence proximately caused "injury or damage to the [Appellants]," but that the "measure of [Appellants'] damages proximately caused by the [District]" was "$0" for DH, DH's mother, and DH's father. CP at 6448-49. These answers to the

15

special verdict are reconcilable under the instructions because the jury could have determined that the District was liable, yet that the Appellants had proved no legally compensable damages.

The Appellants contend that the verdict is irreconcilable under this theory because the jury could not have found that the Appellants had proven damage proximately caused by the District but then awarded nothing in compensation. We disagree with this argument; nothing in the jury instructions foreclosed the jury from determining that the Appellants had suffered injuries or damages yet assessing that the legally compensable value of the injury or damages was "$0." For instance, although instruction 6 stated that the Appellants claimed that the District's negligence caused the Appellants' "injuries and damages" (CP at 6420) and instruction 22 discussed whether the District's negligence was a "proximate cause of injury or damage to the [Appellants]" (CP at 6436), instruction 28 told the jury,

> If your verdict is for the [Appellants], then you must determine the amount of money which will reasonably and fairly compensate the [Appellants] for such damages as you find were proximately caused by the [District].
> . . . .
> The burden of proving damages rests with the [Appellants] and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.

CP at 6442-43. Thus, the instructions allowed the jury to conclude that even if it found that the District was liable, the jury could decline to award damages to the Appellants if the jury was not convinced that the Appellants had proven that the amount of compensation they were entitled to was greater than "$0."

When we review whether the answers to a special verdict are reconcilable under the instructions and the verdict as a whole, we *must* try to reconcile the answers where possible. *See Alvarez*, 76 Wn. App. at 743. Here, the jury's verdict may be reconciled under the District's theory

that the jury decided that the value of the Appellants' damages was "$0." We reject the Appellants' arguments that a new trial should have been granted because the verdict was irreconcilable.[10]

Next, we turn to whether the trial evidence substantially supports the verdict.

### C. SUBSTANTIAL EVIDENCE TO SUPPORT A "$0" VERDICT

The Appellants further argue that even if the verdict was reconcilable, the trial court abused its discretion when it ruled that there was substantial evidence to support a "$0" verdict for each Appellant. Again, we disagree.

A trial court abuses its discretion when it denies a motion for a new trial where the verdict is contrary to the evidence. *Sommer v. Dep't of Soc. & Health Servs.*, 104 Wn. App. 160, 172, 15 P.3d 664 (2001). We review the record to determine whether there was sufficient evidence to support the verdict: that is, viewing the evidence in the light most favorable to the nonmoving party, there must be "'substantial evidence'" to support the verdict and the verdict must not be founded on mere theory or speculation. *Sommer*, 104 Wn. App. at 172 (quoting *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)).

We have stated that

when a court reviews a jury's verdict
    [the] court will not willingly assume that the jury did not fairly and
    objectively consider the evidence and the contentions of the parties relative

---

[10] We note that the Appellants proposed the instruction that became instruction 5 and that the Appellants had an opportunity to clarify instruction 5 when the jury posed a question regarding that instruction. The Appellants, however, chose not to do so and repeatedly "urg[ed] the Court not to give" any additional instructions. 12 RP at 2212, 2215. Further, we are not asked to decide whether it was error to give instruction 5 together with instruction 19, and thus we do not reach this issue. We have doubts whether instruction 19 was properly given due to the interplay between instructions 19 and 5 as discussed here. But Appellant's challenge to instruction 19 is solely on the grounds that it was "misleading and confusing" because it was negatively phrased, redundant, and biased in favor of the District. Br. of Appellants at 47.

> to the issues before it. The inferences to be drawn from the evidence are for the jury and not for [the] court. The credibility of witnesses and the weight to be given to the evidence are matters within the province of the jury and even if convinced that a wrong verdict has been rendered, the reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered.

*Estate of Stalkup v. Vancouver Clinic, Inc., P.S.*, 145 Wn. App. 572, 586, 187 P.3d 291 (2008) (alterations in original; citation omitted). In *Stalkup*, we further stated that "[e]ven in those instances, where several competent experts concur in their opinion and the opposing party does not offer contrary expert evidence, the jury is bound to decide the issue on its own fair judgment, assisted by the expert testimony." 145 Wn. App. at 591. "[T]here is no per se rule that general damages must be awarded to every plaintiff who sustains an injury, [although] a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages." *Palmer v. Jensen*, 132 Wn.2d 193, 201, 937 P.2d 597 (1997).

The District cites to *Kozma v. Starbucks Coffee Co.*, which is illustrative that a defendant may be liable for injury to a plaintiff, yet the plaintiff may suffer no legally compensable injury. 412 N.J. Super. 319, 990 A.2d 679 (2010). There, the plaintiff, who had a preexisting knee injury, slipped and fell outside a Starbucks and sued Starbucks Corporation for damages. *Kozma*, 412 N.J. Super. at 322. At trial, the jury allocated "sixty percent of the negligence and proximate cause to Starbucks and the balance" to the plaintiff. *Kozma*, 412 N.J. Super. at 321. However, the jury unanimously declined to award any compensatory damages. *Kozma*, 412 N.J. Super. at 321. The appellate court affirmed the jury's verdict, noting that a jury "'need not give controlling effect to any or all of the testimony provided by experts even in the absence of [contrary] evidence.'" *Kozma*, 412 N.J. Super. at 325 (quoting *State v. Spann*, 236 N.J. Super. 13, 21, 563 A.2d 1145 (1989), *aff'd*, 130 N.J. 484, 617 A.2d 247 (1993)). Rather, "the evidence was susceptible to an

interpretation that minimized the monetary equivalent of plaintiff's pain and suffering to its vanishing point. . . . The jury could reasonably find that the impact of the fall was so insignificant that no additional injury beyond plaintiff's preexisting condition was sustained." *Kozma*, 412 N.J. at 325-27.

Here, the District and the Appellants hotly disputed whether or not DH suffered any compensable damages because of the molestation. The District's expert acknowledged that DH had been briefly upset on the afternoon of the bus incident but also that the

> best available information in the records is that [DH] really wasn't any different in the immediate time frame following what happened on the bus outside of the afternoon when supposedly something happened and carrying forward. So the picture that emerges is one of someone who is pretty much the same after the time of whatever happened on the bus as she was before.

8 RP at 1531. The expert further testified at length that all of DH's symptoms were attributable not to any molestations but to her preexisting Trisomy X. Finally, the expert opined that the "[p]robability" was that DH would not "have any future problems" related to the molestation, which DH did not seem to remember. 8 RP at 1545. Notably, the Appellants' own expert confirmed on cross-examination that DH did not independently remember the incidents.

DH's mother also testified that DH's toileting issues had begun in kindergarten and that DH's mother did not report any of DH's symptoms allegedly related to the molestations until long after the incidents. Finally, multiple teachers testified that they witnessed no changes in DH's behavior following the molestations. Thus, viewing the evidence in the light most favorable to the District, there is substantial evidence to support the jury's award of "$0" as DH's compensation for the molestations. *Sommer*, 104 Wn. App. at 172.

The parties did not as clearly contest whether DH's parents suffered damages. In fact, at trial, Dr. Vandenbelt confirmed that DH's mother suffered symptoms including guilt, anger, anxiety, and effects to her preexisting depression, all of which resulted from DH's mother's own understanding of what had happened on the bus. During the Appellants' case, they presented undisputed testimony that learning about the molestation had caused DH's mother to feel "like [her] whole world was coming down." 7 RP at 1237. The Appellants' expert briefly testified that DH's mother suffered as a result of DH's abuse—in particular, she worried and felt "guilty," and she could not "stop thinking about" and imagining "what must have happened on the bus." 6 RP at 1031. The abuse had caused DH's mother to experience depression and anxiety. DH's father testified about his "disturbing" fears that DH's future would be affected because she had been molested. 7 RP at 1360. Notably, the District did not focus upon DH's mother's injuries during her cross-examination and did not cross-examine DH's father at all.

However, even where several witnesses have given uncontroverted testimony, a jury is "bound to decide the issue on its own fair judgment," assisted by the testimony. *Stalkup*, 145 Wn. App. at 591. DH's parents' testimony about "guilt," "anger," "depression," and "anxiety," although evidence of emotional upset, could reasonably have been assessed by the jury not to rise to the level of upset that would merit a damages recovery. *See, e.g.*, *Kozma*, 412 N.J. Super. at 325-27. Thus, again, viewing the evidence in the light most favorable to the District, substantial evidence supports a "$0" verdict for DH's parents. For these reasons, we hold that the trial court did not abuse its discretion when it denied Appellant's new trial motion.

20

## II. JURY INSTRUCTION CHALLENGE

The Appellants argue that the trial court abused its discretion when it gave instruction 19, which the Appellants contend was (1) misleading and confusing because it was phrased negatively, (2) redundant with instructions 22 and 28, and (3) slanted in favor of the District. The Appellants further contend that (4) the claimed error was harmful because instruction 19 allegedly provides the only grounds to reconcile the jury's verdict. We hold that the Appellants' arguments either fail or are waived.

### A. LEGAL PRINCIPLES

We review de novo whether a jury instruction is an accurate statement of the law. *Terrell v. Hamilton*, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). But we review for an abuse of discretion the trial court's decision regarding how to word an instruction or whether to give an instruction. *Terrell*, 190 Wn. App. at 498. A party must make a proper objection to a jury instruction to preserve its challenge for appellate review. *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 313, 372 P.3d 111 (2016). The exception must be sufficient to apprise the trial judge of the objection's nature and substance. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 746, 310 P.3d 1275 (2013). Negatively phrased instructions may be objectionable for at least two reasons: first, they may be misleading and confuse the jury, and second, they may slant the instructions in the opposing party's favor. *Terrell*, 190 Wn. App. at 505.

### B. WAIVER

In its proposed jury instructions, the District included instruction 19 with an additional sentence at the end. At a jury instructions conference, the trial court explained that it would include

instruction 19 (without the additional sentence) as the instruction used in *Rollins*, a case with "significant parallels to this case." 10 RP at 1930 (citing 148 Wn. App. 370). Instruction 19 stated,

> In calculating a damage award, you must not include any damages that were caused by acts of Gary Shafer and not proximately caused by negligence of the [District]. Any damages caused solely by Gary Shafer and not proximately caused by negligence of the [District] must be segregated from and not made a part of any damage award against [the District].

CP at 6433. The Appellants objected to instruction 19 and argued that the instruction "unfairly and prejudicially" "frame[d] the issue in the negative and ha[d] the jury excluding damages immediately as opposed to describing in a positive fashion what they are to award" and misstated the law. CP at 6155; 11 RP at 2066.

On appeal, the Appellants reiterate their argument that instruction 19 was improper because it was negatively framed and further argue that instruction 19 is redundant and slanted in the District's favor. The arguments that the instruction is redundant and slanted in the District's favor were not made before the trial court. Thus, we decline to review these arguments unless Appellants' instruction conference arguments were "'sufficient to apprise the trial judge of the nature and substance of the objection[s].'" *Washburn*, 178 Wn.2d at 746 (quoting *Crossen v. Skagit County*, 100 Wn.2d 355, 358, 669 P.2d 1244 (1983)).

Here, the Appellants' argument that instruction 19 is redundant with other instructions was not raised in the trial court and accordingly has not been preserved. *See Millies*, 185 Wn.2d at 313; *Washburn*, 178 Wn.2d at 746. Further, the Appellants' argument that instruction 19 is one-sided is not sufficiently related to the Appellants' argument that it is confusing—*Terrell* indicates that one-sidedness and capacity to be misleading are distinct reasons that a negatively phrased instruction may be objectionable. *See* 190 Wn. App. at 505. For these reasons, we hold that the

Appellants preserved only their arguments that instruction 19 was misleading, and accordingly confusing, because it is negatively phrased.

## C. NO ABUSE OF DISCRETION

As discussed, the Appellants' remaining argument is that the trial court abused its discretion because instruction 19 was misleading and confusing. We disagree.

Contrary to the Appellants' arguments, there is no per se rule that the giving of a negatively phrased jury instruction is an abuse of discretion. The Appellants rely upon *Rickert v. Geppert*, in which the court determined that an instruction "not to compare negligence of the parties, if any exists" was more likely to confuse, than aid, the jury. 64 Wn.2d 350, 355-56, 391 P.2d 964 (1964). But *Rickert* does not absolutely bar the giving of a jury instruction phrased in the negative; rather, there, the court granted a retrial on other grounds and determined that while there was "no abuse of judicial discretion in the giving of the instruction," a similar instruction "should not be given in a retrial" if it were proposed. 64 Wn.2d at 356.

Here, the trial court gave instruction 19 because the instruction had been used in *Rollins*. In *Rollins*, a passenger sued King County Metro Transit for negligence arising out of an altercation on a Metro bus. 148 Wn. App. at 372-73. Division One of this court observed that "[t]he intentional conduct of unknown assailants was a proximate cause of injury" but that the passenger sought recovery solely from Metro and not from the assailants who intentionally attacked her. *Rollins*, 148 Wn. App. at 379. Division One held that it was not misleading to give an instruction that,

> "[i]n calculating a damage award, you must not include any damages that were caused by acts of the unknown assailants and not proximately caused by negligence of the defendant. Any damages caused solely by the unknown assailants and not

proximately caused by negligence of defendant [Metro] must be segregated from and not made a part of any damage award against [Metro.]"

*Rollins*, 148 Wn. App. at 379. Given the similarity of this case to *Rollins*, the trial court's decision that instruction 19 would be helpful to the jury and was not misleading or confusing was not unreasonable. Accordingly, the Appellants' argument that the trial court abused its discretion when it gave instruction 19 because that instruction was negatively phrased fails. Because the trial court acted within its discretion and accordingly did not err, we do not address the Appellants' contention that the alleged error was not harmless.

### III. SUMMARY JUDGMENT

The Appellants contend that the trial court erred when it denied their summary judgment motion on liability.[11] We decline to address this argument.

An issue is moot if we can no longer provide effective relief. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602, 229 P.3d 774 (2010). Because we affirm the jury verdict finding the District liable, it is no longer material that the trial court denied summary judgment on liability.

### IV. EVIDENTIARY RULING

The Appellants also argue that the trial court abused its discretion when it excluded the District's liability admissions from *Crunkleton*. The Appellants contend that exclusion of the District's prior liability admissions was not harmless error because had the evidence been

---

[11] The Appellants also argue that the summary judgment ruling was "not harmless." Br. of Appellants at 55. But we do not address this argument because we do not review the denial of summary judgment motions for harmless error. *See Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004).

admitted, the Appellants could have streamlined their liability case and focused upon presenting evidence of damages. We reject this argument.

Evidentiary error is harmless unless it affects the outcome of the case. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 729, 315 P.3d 1143 (2013). Thus, we reverse a jury's verdict on the basis of evidentiary error only where we can say that the error affected that verdict. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

We assume without deciding that the trial court abused its discretion when it declined to admit the *Crunkleton* documents. Turning to harmless error, the Appellants do not argue that the *Crunkleton* documents would have proven damages. The Appellants argue instead that the admissions were probative "regarding the central issues of duty, breach, and liability." Br. of Appellants at 65. We thus assume that any effect of their admission would go to liability. As discussed, the jury found that the District was, in fact, liable. Therefore, even if we were to agree that the trial court erred, the error would be harmless because it could not have affected the liability verdict. *See Brown*, 100 Wn.2d at 196.

The Appellants provide no authority for the proposition that the exclusion of evidence is harmful merely because it would have allowed for a more "streamlined" presentation of a party's case. Here, the Appellants were unable to more fully present their damages case because they wrongly assumed that the District would not contest liability, failed to seek a continuance, and even opposed the District's request for a continuance shortly before trial. We reject the Appellants' arguments and hold that even assuming error in the exclusion of the *Crunkleton* documents, that error would have been harmless.

## V. TRIAL COURT ATTORNEY FEE MOTION

The Appellants contend that they are entitled to an award of fees under CR 37(c) because the District "fail[ed] to admit its negligence prior to trial," in particular its "breach of its duty." Br. of Appellants at 72, 75. We reject the Appellants' arguments.

"We review a trial court's decision to impose discovery sanctions under CR 37(c) for an abuse of discretion"; a trial court "abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds." *Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 472, 105 P.3d 378 (2005). CR 36(a) governs requests for admission of the truth of matters including "the application of law to fact"; the purpose of the rule "is to eliminate from controversy factual matters that will not be disputed at trial." *Thompson*, 153 Wn.2d at 472. Thus, "a party is not required to concede either factual matters central to the lawsuit or legal conclusions." *Thompson*, 153 Wn.2d at 472.

> If a party fails to admit the . . . truth of any matter as requested under [CR] 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter, the party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to [CR] 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe the fact was not true[,] or (4) there was other good reason for the failure to admit.

CR 37(c).

In September 2015, the Appellants requested that the District admit that it "failed to act reasonably in protecting D.H. from [Shafer's] sexual abuse" and that the District "breached its duty of care in failing to protect D.H. from [Shafer's] sexual abuse." CP at 4561-62. The District refused these requests and explained that each request did "not refer to a factual issue but

involve[d] a question of law." CP at 4561-62. After trial, the Appellants moved for fees and costs and argued that fees were appropriate under CR 37(c) because the Appellants' requests sought the District's "opinion with regard to the application of law to fact." CP at 6703. The District responded that it had properly refused to "admit negligence" and that the requests were improper, relying on both the rules that a party is not required to admit factual matters central to the lawsuit and that requests for admission cannot request that a party admit a legal conclusion. CP at 7431. The trial court denied the Appellants' request.

In *Thompson*, the plaintiff requested that the defendant admit that its negligence was, among other things, "the sole proximate cause" of a fire. 153 Wn.2d at 473. Our Supreme Court noted that although this request could be characterized as the "'application of law to fact'" under CR 36(a), the request "undoubtedly requested [the defendant] to admit [a] legal conclusion[]." *Thompson*, 153 Wn.2d at 474 (quoting CR 36(a)). "Negligence and proximate cause are legal conclusions and are matters usually reserved for the jury." *Thompson*, 153 Wn.2d at 474. Thus, despite the request's phrasing, the defendant had "'good reason for the failure to admit'" under CR 37(c)(4).

Here, unlike in *Thompson*, at issue are admissions requiring that the District admit *breach of duty*, rather than proximate cause or negligence. *See* 153 Wn.2d at 473. The Appellants argue that breach of duty is "'a question[] of fact for a jury,'" so that *Thompson* should not apply. Br. of Appellants at 74 (quoting *Bowers v. Marzano*, 170 Wn. App. 498, 506, 290 P.3d 134 (2012)). But the Appellants' reliance upon *Bowers* is misplaced—that case states that both breach of duty *and proximate cause* are "generally questions of fact for a jury." 170 Wn. App. at 506. As discussed, *Thompson* held that proximate cause is a legal conclusion usually reserved for the jury. 153 Wn.2d

at 474. Thus, *Bowers'* language that proximate cause and breach of duty are both questions of fact for the jury fails as a reason to distinguish *Thompson*.

Because the District was not required to concede breach of duty, the District had "'good reason for the failure to admit.'" *Thompson*, 153 Wn.2d at 474 (quoting CR 37(c)(4)). Accordingly, we hold that the trial court did not abuse its discretion when it denied the Appellants' motion for costs under CR 37.[12]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.

_____

[12] In the alternative, the District was not required to admit breach of duty because breach of duty was a central issue in dispute. *See Thompson*, 153 Wn.2d 472. At trial, the District contested whether it had breached its duty; for instance, in closing, the District argued that in order to find it liable, the jury would have to find that the District "did something wrong . . . that violated the standard of care." 11 RP at 2135. The District also elicited testimony from Shafer that he had carefully hidden his actions from others to avoid detection.